# United States Court of Appeals

## For the First Circuit

No. 99-1264

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT McKELVEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Boudin, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Nathan Z. Dershowitz, with whom Victoria B. Eiger and Dershowitz & Eiger, P.C. and Alan M. Dershowitz were on brief for appellant.

Helen White Fitzgibbon, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

February 11, 2000

**BOWNES**, <u>**Senior Circuit Judge**</u>.   Appellant, Robert McKelvey, appeals from a judgment of conviction and sentence entered by the United States District Court for the District of New Hampshire.   We reverse the conviction because we rule that McKelvey's actions did not meet the statutory requirement of possession of "three or more" matters constituting child pornography.

## I. <u>Facts</u>

A federal grand jury indicted McKelvey on April 2, 1998, charging him, in a three-count indictment, with sexual exploitation of children in violation of 18 U.S.C. § 2251(a) (1984), possession of photographs depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B) (1984), and inducing the interstate transportation of a child with the intent that the child engage in prohibited sexual activity in violation of 18 U.S.C. § 2422 (1986).

On November 3, 1998, McKelvey executed a written plea agreement and entered a change of plea in the district court, pleading guilty.   The gravamen of this agreement was that McKelvey would plead to possession of photographs depicting a minor engaged in sexually explicit conduct.   In return, the government agreed to drop the other two charges and to forbear opposing a two-level reduction of the applicable offense level for McKelvey's acceptance of responsibility.

The statute under which McKelvey pled guilty states in relevant part:

> (a) Any person who–
>> (4) . . .
>>> (B) <u>knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter</u> which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if–
>>>> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>>>> (ii) such visual depiction is of such conduct;
>> shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B) (emphasis added).[1] The statute defines "sexually explicit conduct," § 2252(a)(4)(B)(i), as including, <u>inter alia</u>, "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(E) (1986).

The photographs that formed the basis for the charges were taken while McKelvey was a camp counselor at a summer camp in Vermont. At the change of plea hearing, the Assistant United States Attorney described the pictures to the court as follows:

---

[1] In 1998, Congress amended 18 U.S.C. § 2252 to prohibit possession of "1 or more" matters. <u>See</u> Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314 § 203(a)(1), 112 Stat. 2974, 2978 (codified at 18 U.S.C. § 2252(a)(4)(B) (West Supp. 1999)). In doing so, Congress also provided an affirmative defense under § 2252(a)(4)(B) for a defendant who could show that he "possessed less than three matters containing [child pornography] and promptly and in good faith took reasonable steps to destroy the matter or report it to law enforcement officials without disseminating it to others." Protection of Children from Sexual Predators Act, § 203(a)(2), 112 Stat. at 2978 (codified at 18 U.S.C. § 2252(c)).

> Those pictures as shown to the jury would show a young boy lying on his back appearing to be asleep on his sleeping bag in a cabin at the camp with a T-shirt pulled up under his arms with his chest exposed, with no underwear, no pants, and no shoes on. He's lying on his back, and the series of three pictures demonstrate that they were taken in the sequence of one from a distance, another from a closer perspective, and the third still from a closer perspective, with, I submit, and the jury could infer, the primary focal point being the genitals or pubic area of the nine-year old boy.

Although the district judge also considered a set of other photographs, the government eventually abandoned its reliance on them; first in a bail hearing in the district court, albeit with some ambiguity,[2] and then forthrightly during oral argument before

---

[2] At a September 1, 1999 bail hearing, a transcript of which was presented to this court as an appendix to Defendant-Appellant's Motion of September 13, 1999, the court and the Assistant United State's Attorney had the following exchange:

> THE COURT: Are you arguing on appeal that that photograph is one of the qualifying photographs?
> MS. FITZGIBBON: Your Honor, my position is that whether it is or not, you don't even have to get there because you have three matters before you which your Honor saw and held to be child pornography.
> THE COURT: I will take that as a no, you are not relying on the missing photograph. How about the photographs of the boy swinging on the rope swing?
> MS. FITZGIBBON: Your Honor, they are less clear under Amirault. But, again, the government's position is you don't need to look at them. There were three matters presented to the court.
> THE COURT: I will take that as, no, you are not relying on those pictures anymore either . . . . Now we're talking about the three photographs of the sleeping boy on the cot; right?
> MS. FITZGIBBON: Um-hum.

Tr. Bail Hearing, 30.

this court.  The government now argues that the conviction can stand solely on the photographs described above.[3]

Precisely speaking, however, the government does not rely on <u>photographs</u> at all.  What was seized from McKelvey were not printed photographs; the police, acting pursuant to a valid warrant, seized a book containing many strips of innocuous photographic negatives.  Among these was the single strip of three negatives containing the images described above.  The government then developed these negatives, turning them into photographs.  There is no suggestion that McKelvey ever developed these negatives.

## II. **Rule 11**

McKelvey urges us to vacate his conviction for possession of photographs of minors engaged in sexually explicit conduct because the requirements of Federal Rule of Criminal Procedure 11 were not satisfied.  He argues that the district court did not comply with Rule 11(f)'s requirement that "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."  Fed. R. Crim. P. 11(f). McKelvey claims that Rule 11(f)'s requirement could not possibly be satisfied, because the photographs that formed the

---

[3] We have received the other photographs as part of the record on appeal.  They show a number of young boys "skinnydipping." Having reviewed them, we think that they fall far short of the legal definition of child pornography, and are squarely within the protection of the First Amendment.

basis for the charge did not depict minors engaged in sexually explicit conduct, as the statute requires. He further argues that Rule 11(f) could not be satisfied because he did not fulfill the statutory requirement that a defendant must possess "three or more" pornographic items in order to incur criminal liability. Because our decision rests on the latter argument, we assume without deciding that the images contained on the negative strip are lascivious.

## A. **Standard of Review**

The fact that McKelvey failed to move to withdraw his plea in the district court is not fatal to his challenge here. As we have stated: "While we ordinarily deem waived an issue not raised before the district court, we will determine Rule 11 compliance for the first time on appeal if the record is sufficiently developed." United States v. Martinez-Martinez, 69 F.3d 1215, 1219 (1st. Cir. 1995). In order to warrant setting aside his plea, McKelvey must show "'a fundamental defect [in the plea proceeding] which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" United States v. Japa, 994 F.2d 899, 904 (1st Cir. 1993) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); see also Fed. R. Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights will be disregarded."). Of course, if McKelvey pled guilty to actions that do not constitute a crime, the Japa standard would be met.

## B. **"Three or more" Photographs**

McKelvey challenges his plea on the grounds that there was no factual basis for the court's finding that he possessed "3 or more books, magazines, periodicals, films, video tapes or other matter," a requirement of 18 U.S.C. § 2252(a)(4)(B). After the briefs on appeal were filed, McKelvey filed a motion with this court, entitled "Defendant-Appellant's Motion for an Order (1) Directing the Government to Produce, For This Court's Inspection, the Strip of Negatives Seized From the Defendant From Which the Government Created Government's Exhibits 3, 4, and 5, and (2) Allowing Defendant-Appellant to Argue Therefrom that the Requirement of 18 U.S.C. § 2252(a)(4)(B) that the Defendant Possessed '3 or More Books, Magazines, Periodicals, Films, Video Tapes or Other Material' Was Not Satisfied." This argument was offered for the first time on appeal, but we do not deem it waived.

Ordinarily, we do not consider arguments proffered for the first time on appeal. See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."). While we recognize that our decision in National Ass'n of Social Workers v. Harwood, 69 F.3d 622, 627-29 (1st Cir. 1995), allows this court the discretion to hear claims not raised below, we believe that this discretion is best used sparingly. See New York State Dairy Foods v. Crowley,

\_\_\_ F.3d \_\_\_, No. 98-2370, slip op. at 20 n.9 (1st. Cir. Nov. 30, 1999). Instead, we find that the argument has not been waived because McKelvey could not possibly have raised it at an earlier date. Because there were, initially and continuing to the final sentencing hearing, a large number of photographs involved, see supra, page 4 and note 2, the issue appeared, if not moot in the technical sense, at the very least irrelevant. See United States v. Jennings, 83 F.3d 145, 151 (6th Cir. 1996) ("Were we to establish a rule precluding subsequent inquiry upon remand into such findings, then defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant."). See also United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir. 1999) (citing Jennings).

Title 18 of the United States Code, § 2252(a)(4)(B) criminalizes the knowing possession of "3 or more books, magazines, periodicals, films, video tapes or other matter which contain any visual depiction [of a child engaging in sexually explicit conduct.]" We have assumed that the matters at issue in this case contain such a depiction; the question remains whether the one negative strip containing three images may be deemed "3 or more . . . matter[s]." The precise issue is one of first impression.

In United States v. Smith, 795 F.2d 841, 846-47 (9th Cir. 1986), the Ninth Circuit held that unprocessed, undeveloped film

constituted a "visual depiction" within the meaning of the statute. The court stated:

> [W]e conclude that the exclusion of unprocessed film from the statute's coverage would impede the child pornography laws by protecting a necessary intermediate step in the sexual exploitation of children. The interpretation urged by Smith would allow unrestricted interstate commerce in child pornography so long as the pornography was still in the form of undeveloped film. Such a loophole is inconsistent with congressional intent; the undeveloped state of the film does not eliminate the harm to the child victims in the film's production or the incentive to produce created by the film's trafficking.

Id. While instructive, Smith does not end our inquiry. It tells us that the negative strip in this case is a matter, but leaves open the question of whether the negative strip constitutes three matters.

The Supreme Court has stated, in a case involving interpretation of an obscenity statute:

> [T]his is a criminal statute and must be strictly construed. This means that no offense may be created except by the words of Congress used in their usual and ordinary sense. There are no constructive offenses. The most important thing to be determined is the intent of Congress. The language of the statute may not be distorted under the guise of construction, or so limited by construction as to defeat the manifest intent of Congress.

United States v. Alpers, 338 U.S. 680, 681-82 (1950). We think that it would be a distortion of Congress's intent to find that one negative strip constitutes three matters. Under the plain language of the statute, a book containing hundreds of photographs would not violate the statute. By the same token, neither can one negative

-9-

strip.  Both are physical media on which are contained multiple images.  Had Congress meant for the number of images to be the relevant criterion, it would have likely stated as much.  Moreover, § 2252(a)(4)(B) punishes possession of "3 or more . . . matter[s] which <u>contain</u> any visual depiction," (emphasis added), and not the visual depictions alone.  To find that the negative strip constituted three matters, we would have to count the visual depictions individually, which seems to us contrary to the language of the statute.

The principle of <u>ejusdem</u> <u>generis</u> supports our interpretation.  This principle states that where general words ("other matter" in this case) follow the enumeration of particular classes of things (books, magazines, periodicals, films, video tapes"), the general words will be construed as applying only to things of the same general class as those enumerated.  The particular things mentioned in the statute are all physical media on which images are stored; so too is a negative strip.  To interpret "other matter" to refer to visual images would be to ignore the plain language of the statute.[4]

---

[4] There is a conflict among the circuits as to whether a computer disk containing multiple images should be treated as one matter or multiple matters consisting of one per image.  <u>Compare</u> <u>United States</u> v. <u>Lacy</u>, 119 F.3d 742, 748 (9th Cir. 1997), (holding that "matter" referred to physical media), <u>cert. denied</u> ___ U.S. ___, 118 S. Ct. 1571 (1998), <u>with</u> <u>United States</u> v. <u>Vig</u>, 167 F.3d 443, 448 (8th Cir. 1999) (holding that "matter" referred to images, regardless of physical media), <u>cert. denied</u> <u>sub. nom.</u> <u>Tom Vig</u> v. <u>United States</u>, ___ U.S. ___, 120 S. Ct. 146 (1999) and <u>cert. denied</u> <u>sub. nom.</u> <u>Donovan Vig</u> v. <u>United States</u>, ___ U.S. ___, 120 S. Ct. 314 (1999).  However this issue might be resolved, we view a computer disk as potentially distinguishable from a negative strip

Congress, in the version of the statute at issue here, used language that left open the possibility that one might possess one or more items of child pornography without incurring liability under the statute. Again, assuming that the images are lascivious, that is exactly what has happened here. When Congress realized this possibility, it changed the statute. See supra note 1. As one representative stated:

> What is wrong? Present Federal law, which says it is legal to possess one or two pieces of child pornography, but not three or more. Now, that was said to be the result of a compromise with civil libertarians, but I would say that it was an insane compromise with the devil, a compromise which exposes every American child to pedophiles and child predators who lurk in every American community. Let us also say that any item of child pornography, one item, is the ultimate example and evidence of the ultimate child abuse.

144 Cong. Rec. H4504 (1998) (statement of Rep. Bachus). Another member remarked:

> [T]he gentleman from Alabama (Mr. Bachus) and I are offering an amendment that will eliminate a loophole in the current law that currently allows individuals to legally possess child pornography.
> . . . . Mr. Chairman, under existing Federal law, an individual can only be prosecuted for possessing child pornography if they have three or more books, magazines, periodicals, films, videotapes or any other matter which contain a visual depiction of a minor engaging in sexually explicit conduct. Unfortunately,

---

because the huge number of unrelated images that may be contained on a disk at least permit an analogy to a bookshelf or file cabinet, and there is no counterpart language in the statute itself ("films," "videotapes") analogous to a negative strip and treated in the statute as a single matter.

> that means a pedophile can legally possess a book or magazine with literally hundreds of pictures of children being sexually abused. Worse yet, it is also possible that these predators can legally possess two videotapes up to several hours long featuring children being molested.

144 Cong. Rec. H4503 (1998) (statement of Rep. Riley) (emphasis added). As the legislative history of the amendment demonstrates, Congress knew what the original statute required, and exercised its prerogative to alter the statute so that conduct such as McKelvey's could be punished in the future. Fortunately for McKelvey, Congress did so after McKelvey's indictment.

Accordingly, the requirement of the statute under which McKelvey was prosecuted - that the defendant possess three or more items - is not satisfied in this case. Lacking a factual basis for acceptance of McKelvey's plea then, the district court erred in accepting that plea. This constitutes a fundamental defect in the plea proceeding, thus meeting the standard enunciated in United States v. Japa, 994 F.2d 899, 904 (1st Cir. 1993).

## III. Conclusion

We reverse McKelvey's conviction on the possession count. In doing so, we express no opinion as to any issue that may arise if the government seeks to prosecute McKelvey on any other charge.