# United States Court of Appeals
## For the First Circuit

---

No. 98-1144

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL GANDIA-MAYSONET,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

Alexander Zeno, by appointment of the court, for appellant.
Camille Velez-Rive, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jorge E. Vega-Pacheco, Assistant United States Attorney, Chief, Criminal Division, were on brief for the United States.

September 13, 2000

BOUDIN, Circuit Judge. Daniel Gandia-Maysonet was convicted upon a plea of guilty to one count of carjacking, 18 U.S.C. § 2119 (1994), and one count of using a firearm in connection with that crime, 18 U.S.C. § 924(c)(1) (1994). On this appeal he seeks to set aside his plea. Because no trial has been held, there is no definitive version of the facts of the underlying crime. Based on Gandia's version and that of the government (to which Gandia did not object), the essential outline of events is as follows.

On March 20, 1995, in Vega Baja, in the Commonwealth of Puerto Rico, Ivan Pizarro-Torres invited Gandia to take a drive and then asked him to rob Victor Colon-Ortiz, a lottery ticket seller. Gandia said he would not do the robbery alone, so Ivan Pizarro enlisted his cousin, Samuel Pizarro, to join in the scheme. Ivan Pizarro then drove Gandia and Samuel Pizarro to a point near Colon's home and departed with his vehicle, leaving Gandia and Samuel Pizarro with Ivan's pistol. Gandia and Samuel Pizarro circled the house, spotted Colon in his carport, and approached him.

Samuel Pizarro announced that this was a hold-up; Colon took out a knife and moved toward Samuel, and Samuel then shot

-3-

Colon five times, killing him.[1]  Colon's wife was also shot and suffered serious injury but survived.  Samuel Pizarro proceeded to drive Colon's car through a closed gate, and Gandia then joined him.  After fleeing with Colon's car, the pair retrieved money from the trunk of the car and shared it with Ivan Pizarro. Some months later, Gandia and another individual shot and killed Samuel Pizarro.  Gandia is now serving a 30-year Commonwealth sentence for that crime.

In December 1996, the government indicted Gandia and Ivan Pizarro for carjacking and using a firearm in the course of carjacking, directly and while aiding and abetting each other as well as others not charged.  Samuel Pizarro was no longer available as a witness, but Ivan Pizarro agreed to testify against Gandia, and the government disclosed that it had recovered Gandia's fingerprint from the trunk of Colon's car. In light of this evidence, Gandia and the government reached a plea agreement, which provided for Gandia to plead guilty to both counts in exchange for an agreed-upon sentence of 30 years for carjacking and a consecutive 5-year sentence on the firearm count.

---

[1]This version of the shooting was supplied by Gandia himself at his change-of-plea hearing.  The government's version of events took no position on whether Gandia or Samuel Pizarro shot Colon and his wife.

On May 12, 1997, the district court conducted a change-of-plea hearing and accepted Gandia's guilty plea under Rule 11 of the Federal Rules of Criminal Procedure.  In the colloquy, Gandia accepted as true the government's written version of facts attached to the plea agreement, and he made a short statement inculpating himself in the robbery.  After a presentence report, the court imposed the agreed-upon sentence on October 7, 1997.  Gandia then filed a notice of appeal.

Thereafter, Gandia's counsel filed an <u>Anders</u> brief, pursuant to <u>Anders</u> v. <u>California</u>, 386 U.S. 738, 744 (1967).  In response to this court's direction, Gandia's counsel briefed two issues for our consideration.  One is whether Gandia's guilty plea was invalid because the scienter element of the carjacking crime was misstated at several points in the hearing, so that the plea was not knowing and voluntary.  The other is whether the facts to which Gandia admitted provide a sufficient factual basis for a plea to the carjacking offense, as required by Federal Rule of Criminal Procedure 11(f).

Appellate review of guilty pleas reflects a fairly specialized body of doctrine.  Failures to comply with very specific, yet technical, requirements of Rule 11 are often found "harmless," Fed. R. Crim. P. 11(h).  <u>E.g.</u>, <u>United States</u> v. <u>McDonald</u>, 121 F.3d 7, 11 (1st Cir. 1997), <u>cert. denied</u>, 522 U.S.

1062 (1998).  But, because a guilty plea is a shortcut around the fact-finding process, reviewing courts have been willing to intervene when an error in the guilty plea process arguably affects a "core concern" of Rule 11.  <u>United States</u> v. <u>Hernandez-Wilson</u>, 186 F.3d 1, 5 (1st Cir. 1999).  This includes ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial.  <u>See</u> <u>United States</u> v. <u>Ferguson</u>, 60 F.3d 1, 2 (1st Cir. 1995); <u>United States</u> v. <u>Cotal-Crespo</u>, 47 F.3d 1, 4-6 (1st Cir.), <u>cert. denied</u>, 516 U.S. 827 (1995).

We think that this core requirement has not been satisfied here.  To sum up at the start, everyone involved--the prosecutor, the district court and Gandia's counsel--misunderstood the scienter element in the offense in a manner prejudicial to Gandia; and although we think that the facts proffered at the Rule 11 hearing would have provided an adequate basis for accepting the plea, the factual basis was not overwhelming as to the scienter element.  In all, we are far from certain that Gandia would have agreed to plead guilty if he had fully understood what the government had to prove as to scienter.  <u>Cf.</u> <u>United States</u> v. <u>Abernathy</u>, 83 F.3d 17, 19 (1st Cir. 1996).

The original version of the carjacking statute enacted in 1992 required, as does the current version, that the defendant take a motor vehicle "from the person or presence of another by force and violence or by intimidation"; but in addition, it also required that the defendant have possessed a firearm.  18 U.S.C. § 2119 & note (1994).  In 1994, aiming to broaden the statute,[2] Congress struck the firearm requirement and substituted a requirement that the defendant act with "the intent to cause death or serious bodily harm."  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 60003(a)(14) (internal quotations omitted).  Thus, the statute now provides as follows:

> Whoever, <u>with the intent to cause death or serious bodily harm</u>[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall
>
> > (1)  be fined under this title or imprisoned not more than 15 years, or both,
> >
> > (2)  if serious bodily injury . . . results, be fined under

---

[2]<u>See</u> 140 Cong. Rec. E858 (daily ed. May 5, 1994) (extension of remarks by Rep. Franks) ("My legislation is significant because it includes carjacking murders that do not involve the use of a firearm."); 139 Cong. Rec. S15301 (daily ed. Nov. 8, 1993) (statement of Sen. Lieberman) ("This amendment will broaden and strengthen [the carjacking] law . . . .").

                    this title or imprisoned not
                    more than 25 years, or both,
                    and

                    (3)   if death results, be
                    fined under this title or
                    imprisoned for any number of
                    years up to life, or both, or
                    sentenced to death.

18 U.S.C. § 2119 (1994) (emphasis added) (footnote omitted).

        Gandia committed the Colon robbery six months after the
1994 amendment became effective, and the new indictment
explicitly alleged an intent to cause death or serious bodily
harm.   However, at the change-of-plea hearing, the district
judge described count one to Gandia and, separately, told him
what the government would have to prove to convict on count one.
In both instances, the court said that the required intent was
that Gandia "knowingly and unlawfully" have taken the motor
vehicle; nowhere did the court tell Gandia that he would need to
have intended to kill or cause serious bodily harm.   Nothing in
the factual scenario described by the government or admitted by
Gandia specifically referred to an intent on Gandia's part to
cause death or serious bodily harm.

        The district court's error may well have been caused
by an earlier mistake by the prosecutor:   in both the plea
agreement and the appended government version of the facts, no
reference appears to any intent to cause death or bodily injury.

                              -8-

Instead, both documents used the "knowingly and unlawfully" language that reappeared in the judge's colloquy. Thus, the indictment aside, Gandia was misadvised four times as to the scienter requirement and told that the only intent required of him was that he have knowingly and unlawfully taken the car.

The error was less serious than might first appear because of the way in which the Supreme Court construed the new scienter requirement last year. See Holloway v. United States, 526 U.S. 1, 3 (1999). Reading the statute in light of the amendment's purpose, the Court held that the intent to cause death or serious bodily harm could be satisfied not only by "actual" intent but also by "conditional" intent, that is, by a willingness to cause death or serious bodily harm if necessary to hijack the car. Id. at 11-12. Thus, if Samuel Pizarro were on trial and were shown to have fired the pistol immediately before fleeing in the car, it would be fairly easy to satisfy the requirement as to him.

Assuming Gandia's version of events, in which Samuel Pizarro was the shooter, the case against Gandia is much closer. Of course, Gandia was involved in the robbery and, under Commonwealth law, may have been responsible for the death. But to convict him of carjacking, the government under Holloway would have to show at least a conditional intent to kill or

cause serious bodily injury.[3]  And while Samuel Pizarro showed his actual intent to do so by shooting two victims, no equivalent evidence (so far as we know) is available against Gandia.

This brings us to the question whether the misstatement of the scienter standard at the Rule 11 colloquy was likely enough to have influenced the plea so that the plea should now be set aside.  It is settled law that an understanding of the charges by the defendant is a critical element for a guilty plea.  Bousley v. United States, 523 U.S. 614, 618-19 (1998); United States v. Miranda-Santiago, 96 F.3d 517, 523 (1st Cir. 1996).  Here, the indictment correctly tracked the statute, and Gandia agreed that his counsel had discussed the indictment with him; but whatever force this might have in other situations, see, e.g., United States v. Marrero-Rivera, 124 F.3d 342, 350 (1st Cir. 1997); United States v. Martinez-Martinez, 69 F.3d 1215, 1221-22 (1st Cir. 1995), cert. denied, 517 U.S. 1115 (1996), the government in the plea agreement and the judge in

_____

[3]Although Gandia was also charged with aiding and abetting, the government has assumed throughout that Gandia had to have the intent required of a principal, and it has made no claim that something less would do for an aider and abettor.  See generally United States v. Rosario-Diaz, 202 F.3d 54, 62-63 (1st Cir. 2000).

the hearing then proceeded _affirmatively_ to misstate the scienter element.

This repeated misstatement, if accepted by Gandia, could well have encouraged him to plead guilty. After all, a defendant who honestly did not think that he had intended to kill or maim might well bridle if told that he had to admit to this intent, even with the _Holloway_ gloss. Of course, if the evidence of the requisite intent were overwhelming--say, there was direct evidence that _Gandia_ himself had shot the victims--it would be hard to think that the misstatement made any difference. But here the evidence of conditional intent is indirect and far from overwhelming. Thus, the error in the Rule 11 colloquy was not harmless.

Nonetheless, because Gandia did not object or raise the scienter issue in the district court by a motion to withdraw the plea, the objection has been forfeited unless the mistake constitutes "plain error." _See_ Fed. R. Crim. P. 52(b); _United States_ v. _Olano_, 507 U.S. 725, 731-32 (1993). Admittedly, our case law is not perfectly uniform on this point, but most of our Rule 11 cases have invoked the plain error standard;[4] it accords

---

[4]Since _Olano_, we have referred to the plain error standard in at least eight Rule 11 cases, _e.g._, _United States_ v. _McKelvey_, 203 F.3d 66, 70 (1st Cir. 2000), but, in several other recent decisions, we have found it sufficient that the error was harmless and have declined to say what standard governed, _e.g._,

-11-

with Rule 52 and its advisory committee notes; and it has been adopted by most of the circuits that have addressed the issue in the Rule 11 context. Among the other circuits, the Second, Fourth, Sixth, Seventh and Eleventh have adopted the plain error standard in Rule 11 cases, while the harmless error standard has been adopted by the Ninth Circuit and, in a footnote without analysis, by the D.C. Circuit. The case law is set forth in an appendix to this opinion.

The main _practical_ difference between the two standards is that plain error requires not only an error affecting substantial rights but also a finding by the reviewing court that the error has "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." _Olano_, 507 U.S. at 732 (quoting _United States_ v. _Young_, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted); _see also_ _United States_ v. _Carrington_, 96 F.3d 1, 5 (1st Cir. 1996), _cert. denied_, 520 U.S. 1150 (1997). The "raise or waive" principle, here as with other kinds of error, serves obvious interests of fairness and judicial economy. _National Ass'n of Soc. Workers_ v. _Harwood_, 69 F.3d 622, 627 (1st Cir. 1995). In sum, the less demanding test of harmless error is used where an objection is

_United States_ v. _Noriega-Milan_, 110 F.3d 162, 166 & n.4 (1st Cir. 1997).

made in the district court and thus properly preserved for appeal; but the bar rises--and the stiffer <u>Olano</u> plain-error test applies--in the absence of an objection.  <u>See generally</u> Fed. R. Crim. P. 52.

One reason why confusion may have arisen in connection with guilty pleas is Fed. R. Crim. P. 11(h).  This provision, added by amendment to the rule governing guilty pleas, says (in substance) that harmless errors should be disregarded but says nothing about plain error.  However, Rule 11(h) was added by amendment for a narrow purpose: to make clear that a Rule 11 error <u>can</u> be harmless, "because some courts have read <u>McCarthy</u> [v. <u>United States</u>, 394 U.S. 459, 471 (1969) ("[P]rejudice inheres in a failure to comply with Rule 11 . . . ."),] as meaning that the general harmless error provisions in Rule 52(a) cannot be utilized with respect to Rule 11 proceedings."  Fed. R. Crim. P. 11(h) advisory committee's notes.

The "fairness, integrity or reputation" plain-error standard is a flexible one and depends significantly on the nature of the error, its context, and the facts of the case. <u>United States</u> v. <u>Young</u>, 470 U.S. 1, 16 (1984); <u>see</u> <u>Ferguson</u>, 60 F.3d at 2-4.  In the taking of a guilty plea under Rule 11, the critical concerns are that the plea be voluntary and that there be an admission, colloquy, proffer, or some other basis for

thinking that the defendant is at least arguably guilty. <u>United States</u> v. <u>Santiago-Becerril</u>, 130 F.3d 11, 20 (1st Cir. 1997). Here, as we have seen, the force of Gandia's plea in evidencing arguable guilt was substantially undercut by the misstatement of the scienter standard. Where, in addition, the other evidence of scienter was thin (although not beyond reasonable inference), we think that the error was not merely "harmful" but also "plain under <u>Olano</u>," because it seriously affected the guilty plea colloquy's fairness and integrity.

Gandia's remaining claim on this appeal is that, quite apart from the scienter element, the trial court erred in finding a factual basis for the plea. Specifically, Gandia says that no evidence exists that he intended to take Colon's car or that he had a conditional intent to kill or cause serious bodily harm. Admittedly, nothing on either point is as conclusive as an admission by Gandia or unequivocal conduct by him (such as personally shooting Colon and taking his car). But in our view there was enough to permit the district court to accept a guilty plea even if we assume, as we do, that Gandia's own statement of guilt contributed nothing on the intent-to-kill-or-injure issue (because of the misstatement of the scienter element). <u>See generally</u> <u>Marrero-Rivera</u>, 124 F.3d at 352; <u>United States</u> v.

Piper, 35 F.3d 611, 614 (1st Cir. 1994), cert. denied, 513 U.S. 1158 (1995).

To begin with the seizure of Colon's car, it is true that, under Gandia's version of the facts, Gandia entered it only after Samuel Pizarro had driven it through the gate. But Gandia stood back only to let Samuel break the gate; and he admitted during the colloquy with the district judge that he had "knowingly" taken the motor vehicle. He now says that seizing the car was the impulsive act of his partner, but the claim of impulsiveness is at least debatable since, even under Gandia's version of the facts, Ivan Pizarro had "left" his cousin and Gandia at the scene, with no means of swift escape except to take Colon's car.

As for the conditional intent to kill or cause serious bodily harm, the government's statement of facts, which Gandia acknowledged to be true, said that, on the day of the robbery, Gandia and Samuel Pizarro obtained the pistol from Ivan Pizarro. Whether or not the weapon was given directly to Samuel Pizarro, it is reasonably inferrable that Gandia at least knew Samuel was armed with a weapon intended to be available in the robbery. Possibly Gandia thought that it would only be used to frighten. Nevertheless, in context, one might infer that Gandia must have

known that the pistol would be fired, if necessary, as indeed it was.

On a plea, the question under Rule 11(f) is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence. See Marrero-Rivera, 124 F.3d at 351. Often what the judge is told at the hearing is an abbreviated version of the full range of government evidence, omitting detail and nuance that would be offered at trial. We think that Gandia's plea had a rational basis in the facts and, if he had been advised of the proper scienter standard, we would uphold it.

There is one last wrinkle. Gandia pled guilty to two offenses, not one, and the misstatement of the scienter element pertained directly only to the carjacking count and not to the separate firearms count. However, quite apart from the package character of the plea agreement, the firearms count itself depended on use or carriage of the firearm "during and in relation to any [federal] crime of violence," 18 U.S.C. § 924(c)(1) (1994), and the only such federal crime of violence charged against Gandia was carjacking. Thus, without a valid

plea to the latter offense, an element of the firearm offense is lacking.

Accordingly, we <u>vacate</u> the judgment of conviction and sentence and <u>remand</u> for further proceedings, consistent with this decision.

<u>It is so ordered.</u>

| Circuits Endorsing a Plain Error Standard | Supporting Citations |
|---|---|
| Second Circuit | United States v. Hidalgo, -- F.3d --, 2000 WL 1051959, at *4 (2d Cir. 2000) ("And because appellant failed to argue in the district court that Judge Carter did not comply with Rule 11(c)(3), we review his claim on appeal only for plain error. See Fed. R. Crim. P. 52(b)."). |
| Fourth Circuit | United States v. Jackson, 151 F.3d 1031, 1998 WL 386109, at *2 (4th Cir. 1998), cert. denied, 525 U.S. 1148 (1999). |
| Sixth Circuit | United States v. Bashara, 27 F.3d 1174, 1178 (6th Cir. 1994), cert. denied, 513 U.S. 1115 (1995). |
| Seventh Circuit | United States v. Cross, 57 F.3d 588, 590 (7th Cir.), cert. denied, 516 U.S. 955 (1995). |
| Eleventh Circuit | United States v. Quinones, 97 F.3d 473, 475 (11th Cir. 1996). |

| Circuits Advocating a Harmless Error Test | Supporting Citations |
|---|---|
| Ninth Circuit | United States v. Odedo, 154 F.3d 937, 939-40 (9th Cir. 1998). |
| D.C. Circuit | United States v. Lyons, 53 F.3d 1321, 1322 n.1 (D.C. Cir. 1995). |

| Other Circuits | Supporting Citations |
|---|---|
| Third Circuit | Compare United States v. Cefaratti, No. 99-3455, 2000 WL 1141562, at *14 n.3 (3d Cir. Aug. 14, 2000) ("The government maintains that Cefaratti's failure to raise this issue before the District Court necessitates plain error review -- an issue on which there is some disagreement in the courts. We need not decide this issue in light of our disposition." (internal citations omitted)), with United States v. Knobloch, 131 F.3d 366, 370 (3d Cir. 1997) (applying the plain error standard where defendant had not raised below his allegation of error in the plea colloquy). |
| Fifth Circuit | Compare United States v. Angeles-Mascote, 206 F.3d 529, 530 (5th Cir. 2000) ("plain error" standard for sufficiency of plea's factual basis), and United States v. Ulloa, 94 F.3d 949, 952 (5th Cir. 1996) ("plain error" standard), cert. denied, 520 U.S. 1157 (1997), with United States v. Glinsey, 209 F.3d 386, 394 n.8 (5th Cir. 2000) ("harmless error" standard). |
| Eighth Circuit | United States v. Young, 927 F.3d 1060, 1061-64 (8th Cir. 1991) (finding alleged errors harmless without discussion of the plain error standard). |
| Tenth Circuit | United States v. Friesen, 198 F.3d 259, 1999 WL 828051, at *7 (10th Cir. 1999) ("Friesen argues for the first time on appeal that the district court violated Fed.R.Crim.P. 11 . . . . Whether we review for plain error or de novo, including the harmless error provision of Fed.R.Crim.P. 11(h), the argument lacks merit." (internal citations omitted)). |