MICHAEL, Circuit Judge, dissenting.
I respectfully dissent. If John D. Strassini had known at his Rule 11 hearing that materiality was an element of the crimes of bank and wire fraud, he would not have pled guilty. This lack of knowledge, which came about through plain error, led Strassini to forego one of his substantial rights, the right to a jury trial. Allowing Strassini’s ill-advised guilty plea to stand, particularly when he vigorously contests the government’s claim of materiality, would seriously affect the “fairness, integrity or public reputation of judicial proceedings.” United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quotation omitted). Accordingly, I would vacate Strassini’s conviction and allow him to enter a new plea.
A.
The majority concludes that “although Strassini did not know materiality was an element of bank and wire fraud at the time he pleaded guilty, if the district court had correctly advised Strassini regarding materiality, there is no reason to believe that Strassini would have sought to withdraw from the plea agreement.” Ante at 554. I disagree. The record supports Strassini’s claim that had he been correctly advised of the elements of the crimes to which he pled guilty, he would have forgone the plea and exercised his right to a jury trial. See United States v. Goins, 51 F.3d 400, 402 (4th Cir.1995) (“The court must determine whether the defendant’s knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty.”) (quotation omitted). Strassini signed his plea agreement on December 4, 1998; his Rule 11 plea hearing was held three days later, on December 7, 1998, the date his trial was scheduled to start. J.A. 7. As of November 25, 1998, less than two weeks before the scheduled trial, both sides — Strassini *557 and the government — were filing pre-trial motions in anticipation of a trial. Id. At oral argument, defense counsel said that by December 4, when Strassini decided to plead guilty, subpoenas had already been issued to trial witnesses. Counsel for the government conceded that “strong preparation” had been made for the trial. Thus, the record establishes that until shortly before December 4, 1998, both sides were expecting a trial.
What happened, then, to lead Strassini to change his mind and plead guilty? The record provides a clear answer. Nine days before trial, Strassini’s trial counsel informed him, incorrectly, that the government did not have to prove materiality in order to convict him of the bank and wire fraud charges. At the Rule 11 hearing, the court granted Strassini permission to make a statement. Strassini’s statement, which explains his decision to plead guilty, bears directly on the question of whether he would have gone to trial but for his misunderstanding about the materiality element:
I honestly up until nine days ago had the belief ... I was not guilty of committing a crime.... Once [trial counsel] showed me the decision of the Supreme Court that showed the defense of the four parts, you know, of the crime, the materiality was removed. And that was my contention and defense that they were never material, and therefore, I didn’t think it was a crime.
J.A. 82. (Strassini thought that his false statements to the lending institutions were not material because the statements, according to him, were not important to the institutions’ decisions to make construction loans.) Strassini could not have been more clear in explaining his decision to accept a plea rather than exercise his right to a jury trial. Up until a few days before trial, he believed he was innocent of the bank and fraud charges because he did not think that the government had to prove materiality, though he knew the government could prove the other elements of the crimes. His decision to plead guilty thus rested upon his erroneous understanding that materiality was not an element of the bank and wire fraud offenses — a misunderstanding that went uncorrected by the district court or the government.
The majority suggests that Strassini misunderstood the meaning of materiality. According to the majority, Strassini’s statements at the plea hearing indicate that he “thought that his false statements to the lending institutions were not material because the lending institutions were not at risk of loss.” Ante at 553 n. 2. However, when Strassini’s statements at the plea hearing are read in their entirety, they reveal that while Strassini did not believe that his false statements harmed the banks, he also believed that his false statements were not important to the banks’ decision to lend him money. The Supreme Court case, United States v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), that Strassini looked at, and mistakenly relied upon to conclude that the government did not have to prove materiality, begins its substantive discussion by defining materiality. Wells defines materiality as “hav[ing] a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed.” Id. at 489 (quotation omitted). Thus, at the time of his plea hearing, Strassini was aware of what materiality would mean if it applied in his case. And his defense that his false statements to the banks were not important to their decisions to approve his construction loans falls squarely within this correct understanding of materiality.
The majority further argues that because the government had overwhelming evidence of materiality, Strassini would not *558 have proceeded to trial even if he had realized that the government needed to prove materiality. Strassini’s actions do not support the majority’s argument. Rather, his actions until right before the plea agreement and his statement at the Rule 11 hearing all indicate that, regardless of the strength of the government’s case, he would not have pled guilty if he thought the government had to prove materiality. Again, Strassini did not call off the dogs and plead guilty until his lawyer told him, erroneously, that the government did not have to prove materiality.
The majority also emphasizes (1) that if Strassini had gone to trial he would have faced a potential sentence of 991 years imprisonment and up to $31.5 million in fines and (2) that under the plea agreement he faced only a potential sentence of 100 years imprisonment, about $5 million in fines, and the prospect that the government might recommend a downward departure. The majority then suggests that the prospect of a lighter sentence must have influenced Strassini’s decision to plead guilty. I doubt, however, that a 40-year-old defendant, like Strassini, would see much difference between the risk of 100 years in prison and the risk of 991 years in prison. Even if the government has a strong case, a defendant facing this choice might well opt to exercise his right to a jury trial, betting on the long odds of acquittal. Every defendant has the right to a jury trial and that right exists regardless of the strength of the government’s case. In this case, the record demonstrates that, wisely or not, Strassini would have exercised his right to a jury trial and would not have pled guilty if he had been correctly informed of the elements of the crimes alleged in the indictment. Accordingly, Strassini has demonstrated that the district court’s plain error in failing to advise him of the elements of the crimes charged affected his substantial right to a jury trial.
B.
The majority concludes that even if Strassini could demonstrate that the Rule 11 error affected his substantial rights, “the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings because there was ‘overwhelming’ and ‘essentially uncontroverted’ evidence of materiality.” Ante at 555. Again, I must disagree.
First, we cannot refuse to remedy plain error in the Rule 11 context just because there is evidence that might allow a finding of guilt. While a central part of our inquiry is whether the proceedings “resulted in a fair and reliable determination of guilt,” United States v. Cedelle, 89 F.3d 181, 186 (4th Cir.1996), the determination of whether a Rule 11 error should be recognized does not turn solely on a defendant’s innocence. Rather, “[a]n error may ‘seriously affect the fairness, integrity or public reputation of judicial proceedings’ independent of the defendant’s innocence.” Olano, 507 U.S. at 736-37 (emphasis added).
Second, I disagree with the majority that there is overwhelming and uncontroverted evidence of materiality in this case. Ante at 555. A close reading of the indictment, plea agreement, and plea colloquy indicates that at no time prior to, or during, the Rule 11 inquiry did the government allege that the misrepresentations made by Strassini were material. J.A. 34 62, 67-70. To the extent there is evidence of materiality, it is found in the presentence report (PSR), which as the majority points out, states that “Strassini [in several instances] submitted fraudulent loan information” to financial institutions and “based on these false and fraudulent representations,” the financial institutions lent Strassini money. J.A. 233-36. Yet defense counsel specifically objected to these statements in the PSR at the sentencing *559 hearing. Counsel reiterated Strassini’s persistent contention that the banks did not lend Strassini the money based on his misrepresentations but “because of the nature of the construction business, they weren’t lending based on what he told them. What they were lending on — these were construction draws.” J.A. 107. That is, Strassini told the banks that he wanted “to build a house, they said here’s $10, you come back when you bought $10 worth of nails, we want to see the receipt. That’s the way every one of these loans has proceeded.” J.A. 107-08.
The majority says that these statements by defense counsel do not “undercut the overwhelming evidence” of materiality. Ante at 556 n. 4. I cannot find this overwhelming evidence. For instance, with regard to loans obtained from NationsBank, the PSR states simply that Strassini provided false information to the bank about property he owned and academic degrees he earned. The PSR concludes that “[biased on these false and fraudulent representations ... NationsBank approved two construction loans.” J.A. 238. Nowhere, however, does the PSR recount specific facts to suggest that Strassini knew or should have known that the bank regarded or is likely to have regarded such information as important. See Neder v. United States, 527 U.S. 1, 22 n. 5,119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (defining “materiality”). At most, the facts recounted in the PSR give rise to an inference of materiality, to which Strassini has a defense. He maintains that his false statements were not important to the banks’ decisions to make construction loans. In addition, I do not agree with the majority’s assertion that Strassini “admitted multiple times” that he submitted “false, material information” to banks to obtain loans. Ante at 554 (emphasis added). The majority points to defense counsel’s statement that Strassini never denied, “nor does he deny now submitting false information in support of loan applications.” J.A. 120. The majority also notes Strassini’s statement that he “submitted some false information to obtain loans to build houses.” J.A. 145. Strassini has never denied that he submitted false information to financial institutions in applying for loans. What he has denied is that the banks relied on this false information in making loans to him. His statements at his sentencing hearing indicate only that he admits submitting false information. He has not admitted materiality. In short, the record does contain uncontradicted evidence that Strassini submitted false statements to his banks, but that evidence does not settle the question of materiality.
Finally, I must disagree with the majority’s conclusion that we should not exercise our discretion to recognize the plain error at Strassini’s Rule 11 hearing. I believe the “fairness, integrity, or reputation” of judicial proceedings is undermined when it is clear that the defendant would not have pled guilty but for plain error, and the defendant has a defense theory that he would have submitted to the jury absent the error. Indeed, we and other appellate courts have recognized plain error in similar circumstances.
In United States v. Gandia-Maysonet, 227 F.3d 1 (1st Cir.2000), the First Circuit recognized a plain Rule 11 error and vacated the defendant’s conviction under circumstances similar to this case. In Gandiar-Maysonet the defendant pled guilty to one count of carjacking and one count of using a firearm in connection with that crime. The defendant later moved to set aside his plea on the grounds that he was not adequately informed of the scienter element of the carjacking offense at his Rule 11 hearing. Id. at 3. The First Circuit agreed that the defendant had not been adequately informed of the scienter element and concluded that although the *560 facts proffered at the Rule 11 hearing would have provided an adequate basis for the plea, the factual basis for the scienter element was not overwhelming. Id. at 5. Accordingly, the First Circuit was “far from certain that [the defendant] would have agreed to plead guilty if he had fully understood what the government had to prove as to scienter.” Id. at 3. The court noted that even though a jury could have inferred from the government’s evidence that the defendant had the requisite intent, id. at 6, “[n]othing in the factual scenario described by the government or admitted by [the defendant] specifically referred to an intent on [the defendant’s] part to cause death or serious bodily harm,” id. at 4 (emphasis added). Because the evidence of the defendant’s intent was not conclusive, the court recognized the Rule 11 error “because it seriously affected the guilty plea colloquy’s fairness and integrity.” Id. at 6. Thus, the court vacated the defendant’s conviction and sentence.
In United States v. David, 83 F.3d 638 (4th Cir.1996), we noticed a plain error in jury instructions and vacated the defendant’s conviction for reasons that are applicable to this case. In David the defendant was convicted by a jury for making a false statement to the government. To establish such a violation, the government must prove that the defendant knowingly or willfully made a false statement to a government agency that was material to a matter within the jurisdiction of the agency. Id. at 640. In an application to renew a federal firearms license, the defendant falsely responded that he was not under indictment for a crime punishable by imprisonment for more than one year. At the time, however, he was under indictment for embezzlement, which carried a potential sentence of up to twenty years’ imprisonment. At the defendant’s trial the district court failed to instruct the jury on the element of materiality. Because the defendant did not object to the error at trial, we reviewed the issue under the plain error standard. In deciding whether to recognize the error, we considered that there was “no evidence in the record as to whether the district court determined that materiality had been proven beyond a reasonable doubt.” Id. at 648. We also noted that even if the court could have determined that the false statement was material, “a jury could conceivably have concluded, as [the defendant] maintained at trial and continues to maintain on appeal, that materiality was not ultimately proven.” Id.
In David, as in this case, the government’s evidence created a strong inference of materiality, as surely an applicant for a firearms license would or should know that the government would regard a felony indictment as important. But in David, as here, the defendant had a defense theory. He maintained that he “would have been allowed to continue as a firearms dealer even had he responded truthfully to the indictment question.” Id. Similarly, Strassini argues that the banks approved his construction loans based on the nature of the loans and not his false statements. Neither the indictment, nor the plea agreement, nor the Rule 11 hearing advanced facts to show that Strassini’s misrepresentations were material. To the extent that the PSR contained such allegations, they were directly contested — on grounds of immateriality — by Strassini at the sentencing hearing. At no time did the district court determine that the government could prove materiality beyond a reasonable doubt. And, as was the case in David, “a jury could conceivably have concluded” that Strassini’s defense theory, although weak by the government’s estimation, is valid. The problem is that a jury never had the opportunity to weigh the evidence because Strassini forfeited his right to a jury trial based on the district court’s erro *561 neous recitation of the elements of bank and wire fraud.
Accordingly, I would conclude, in line with David, that the particulars of this case, including “the fundamental nature of the error, leave us with little doubt that this is the kind of case in which our limited discretion under Rule 52(b) is appropriately exercised so as to preserve the fairness, integrity and reputation of the judicial process.” Id. Strassini is entitled to have a jury decide whether his false statements were material to the banks’ decisions to loan him money. See United States v. Gaudin, 515 U.S. 506, 522-23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). I would thus vacate Strassini’s conviction and allow him to plead anew.