# United States Court of Appeals
## For the First Circuit

No. 03-2245

UNITED STATES OF AMERICA,

Appellee,

v.

EHRICK F. DELGADO-HERNANDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Ben T. Clements, with whom Clements & Clements, LLP was on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, was on brief, for appellee.

August 24, 2005

**LIPEZ**, **Circuit Judge**.    Defendant-appellant Ehrick F. Delgado-Hernández seeks to set aside his guilty plea to the charge of possession of a firearm in furtherance of a drug-trafficking offense because of alleged errors in the plea proceedings. Although the plea proceedings in this case raised some problems, Delgado has not met his heavy burden of establishing that any deficiencies in the proceedings below amounted to plain error. Therefore, we affirm his conviction.[1]

## I.

On April 28, 2003, Delgado pled guilty to one count of conspiracy to distribute and to possess with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 846 (Count One), and one count of possession of a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two).    Pursuant to a plea agreement, Delgado stipulated that the drug conspiracy in Count One involved three kilograms of cocaine. Based on that drug quantity, Delgado's leading role in the conspiracy, his acceptance of responsibility, and his Criminal History Category (II), the district court sentenced Delgado on July 28, 2003 to 84 months (7 years) of imprisonment for the conspiracy

---

[1]Delgado's appeal was consolidated with that of a co-defendant for purposes of oral argument.  Because the issues raised in the appeals are unrelated, we have severed the appeals for purposes of decision.  See United States v. Barnes, 244 F.3d 172, 175 n.2 (1st Cir. 2001).  We issue both decisions today.  See United States v. De Los Santos, No. 03-2436 (1st Cir. Aug. 24, 2005).

conviction and a consecutive term of 60 months (5 years) of imprisonment for the firearm possession conviction, for a total of 144 months (12 years) of imprisonment.  The court also ordered Delgado to forfeit $111,000 and imposed a 4-year term of supervised release and a special monetary assessment of $200.

Delgado timely appealed, seeking to vacate his conviction on the firearm possession charge in Count Two only, on the grounds that the court (1) misinformed him of the nature of the charge in violation of Fed. R. Crim. P. 11(b)(1)(G) and his constitutional right to due process, and (2) entered judgment on his guilty plea in the absence of a factual basis in violation of Fed. R. Crim. P. 11(b)(3).

## II.

**A.       Requirements of Rule 11**

In order to be constitutionally valid, a guilty plea must be voluntary and intelligent. Bousley v. United States, 523 U.S. 614, 618 (1998).  "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'"  Id. (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).  "[E]nsuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial" is also "a 'core concern' of Rule 11." United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000)

-3-

(quoting <u>United States</u> v. <u>Hernandez-Wilson</u>, 186 F.3d 1, 5 (1st Cir. 1999)).  Accordingly, Rule 11 requires that a court, before accepting a guilty plea, "inform the defendant of, and determine that the defendant understands, . . . (G) the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1).[2]

Furthermore, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."  <u>McCarthy</u> v. <u>United States</u>, 394 U.S. 459, 466 (1969).  Rule 11 therefore requires a court to "determine that there is a factual basis for the plea" before entering judgment.  Fed. R. Crim. P. 11(b)(3).[3]  This additional procedural requirement "'protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'"  <u>United States</u> v. <u>Ventura-Cruel</u>, 356 F.3d 55, 59-60 (1st Cir. 2003) (quoting Fed. R. Crim. P. 11, advisory committee's note (1966 amendment)).

---

[2]Former Rule 11(c)(1) was recodified as Rule 11(b)(1)(G) in December 2002.  According to the advisory committee's note to the 2002 amendment, the change "[is] intended to be stylistic only."

[3]Former Rule 11(f) was recodified as Rule 11(b)(3) in December 2002.  This change "[is] intended to be stylistic only."  Fed. R. Crim. P. 11, advisory committee's note (2002 amendment).

**B.        Plain Error Review**

"Under ordinary circumstances, we review the district court's acceptance of a guilty plea for abuse of discretion." United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005). However, because Delgado failed to call the district court's attention to the alleged errors in the plea proceedings "despite having had ample opportunity to do so," for example, by seeking to withdraw his plea prior to sentencing pursuant to Fed. R. Crim. P. 11(d)(2), his claim is subject only to plain error review on direct appeal.   Id.    "The defendant's burden under the plain error standard is a heavy one."   United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002).   In order to prevail on either of his challenges, Delgado must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

To demonstrate the requisite effect on his substantial rights, Delgado must "show a reasonable probability that, but for the error, he would not have entered the [guilty] plea."  United States v. Dominguez-Benitez, 542 U.S. 74, ___, 124 S. Ct. 2333, 2336 (2004).  "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine

confidence in the outcome of the proceeding." <u>Id.</u> at 2340 (citations and internal quotation marks omitted).

**III.**

We set forth the procedural backdrop for Delgado's claims in considerable detail, noting several troubling missteps on the part of the government that went undetected by the court. While we ultimately conclude that Delgado has not met his burden of establishing plain error with respect to either of his claims, the government's carelessness in making its record in this case hampered not only our ability to review Delgado's claims on appeal, but also the district court's ability to evaluate the factual basis for his guilty plea.

**A.        The Plea Colloquies**

Delgado's change-of-plea hearing took place on April 28, 2003. After determining that Delgado had received a copy of the charges against him and had "fully discussed those charges and the case in general with . . . counsel," the court described the drug conspiracy charge as listed in Count One of the indictment to Delgado:

> [Y]ou have been charged in a superseding indictment that . . . beginning not later than December 2000 through on or about December 2001, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, you, together with 14 other co-defendants, did knowingly, unlawfully and intentionally, combine, conspire and agree with one another and with others to the grand jury known and unknown, to commit an offense

-6-

defined in Title 21, U.S. Code, Section 841(a)(1), that is, to possess with the intent to distribute and to distribute more than one kilogram of heroin, a Schedule I controlled substance, and more than five kilograms of cocaine, a Schedule II controlled substance, in violation of Title 21, U.S. Code, Section 846.

The court then described the firearm possession charge in Count Two of the indictment:

You have also been charged with Count Two that states that on diverse occasions from December 2000 through December 2001, in the District of Puerto Rico and within the jurisdiction of the court, you, as a defendant, did knowingly possess a firearm in furtherance of a drug trafficking crime, to wit: an unlawful conspiracy to possess and distribute heroin and cocaine, in violation of Title 21, U.S. Code, Section 846, and in violation of Title 18, U.S. Code, 924(c)(1)(A).

The court next proceeded to explain to Delgado the nature of the charges against him:

Now, to be found guilty of this offense if a trial were to be held, the Government would have to prove beyond a reasonable doubt that you unlawfully, willfully, knowingly[,] and intentionally combined, conspired, and agreed with the other co-defendants and with others to the grand jury known and unknown to commit the offense that I have previously described as well as the count concerning the possession of the firearm in connection with the drug trafficking crime.

And, of course, then there are the forfeiture allegations.

Do you understand what I have just explained?

Delgado responded, "Yes, sir."

The government then summarized its evidence in support of the drug conspiracy charge in Count One.[4] The government stated that if Delgado had chosen to face trial on that charge, it would have produced evidence in the form of:

> the testimony of witnesses and most notably recordings of calls intercepted pursuant to the authorized Title [III] wiretap on [Delgado's] telephones that would have shown that beginning not later than December of 2000, [Delgado] agreed with others to smuggle quantities of cocaine and heroin into Puerto Rico.

The government further stated that it would introduce evidence that "on several occasions [Delgado] sought to acquire kilogram quantities of cocaine in Puerto Rico" and "negotiated to purchase heroin and cocaine from persons outside the United States in outfitted go-fast boats [speed boats] to smuggle cocaine and heroin into Puerto Rico." The government concluded by stating that it would introduce evidence that "this defendant and his co-conspirators distributed these narcotics for sale to other persons for further sale to consumers in Puerto Rico and New York."

Despite its recitation of facts in support of the drug conspiracy charge in Count One, the government neglected to present any facts whatsoever in support of the firearm possession charge in Count Two. Similarly, although the government's proffer of

---

[4]Delgado does not dispute the factual basis for his guilty plea to Count One; nor does he appeal his conviction or sentence on that charge.

-8-

evidence in support of the drug conspiracy charge in Count One reflected the contents of the statement of facts that Delgado signed as an attachment to his plea agreement, that statement of facts contains no description of the factual predicate for the firearm possession charge in Count Two. Nevertheless, Delgado pled guilty to both counts in the indictment.

On May 2, 2003, the government acknowledged its error and moved to hold a supplemental Rule 11 hearing "to ensure that the defendant acknowledges and admits the factual basis for his plea" of guilty to the firearm possession charge. In its motion, the government indicated that it had already presented the evidence establishing the factual basis for the firearm possession charge during evidentiary hearings before a magistrate judge on Delgado's motion to suppress a firearm seized from his rental car when federal agents executed arrest and search warrants at his apartment on December 10, 2001. According to the government's motion, the evidence providing a factual basis for the firearm possession charge consisted of: (1) the seized firearm and (2) "intercepted pertinent conspiracy-related telephone conversations in which [Delgado] spoke of his possession of a firearm." The government did not attach transcripts or descriptions of the recorded phone calls to its motion. Instead, the government requested that the court "take notice of its own record of the evidence presented during the [suppression] hearings."

On June 20, 2003, the court held a supplemental Rule 11 hearing in response to the government's motion of May 2, 2003. During the supplemental hearing, the government again "invite[d] the Court's attention to its own records from the [suppression hearing] in which [intercepted telephone] calls were introduced in evidence." After explaining the purpose for the supplemental hearing to Delgado, the court described the firearm possession charge in Count Two as set forth in the indictment, just as it had during the first Rule 11 hearing on April 28, 2003. The court continued: "as counsel for the Government has stated, you know, there was a motion to suppress that was filed in this case, and I take judicial notice of the prior record in this case that states more or less the facts underlying that Count Two." The court did not further specify which parts of the record it was relying on or which facts supplied a basis for the charge. It did, however, make reference later in the hearing to its "adopt[ion of] the [m]agistrate[] [judge's] version of the facts as stated in his report and recommendation" on Delgado's suppression motion.

The government then stated that if the case had proceeded to trial, it would have introduced the evidence it had already presented during the suppression hearing, namely, the "pistol [seized] from [Delgado's rental] car outside of his apartment" and transcripts of intercepted phone calls "in which in coded language [Delgado] in two of these calls, discussed the possession of the

-10-

firearm in connection with the drug activities." The government did not elaborate further on the nature or contents of the phone calls.

Delgado's counsel added only that "when the firearm was seized from that automobile, Mr. Delgado Hernandez was in his apartment and not in the automobile. That's, I think, factually correct." The court then asked Delgado if he "agree[d] with the Government's version that you just heard with respect to Count Two." After consulting with counsel, Delgado replied, "Yes, your Honor." Delgado then pled guilty a second time to the firearm possession charge in Count Two.

The presentence investigation report that was sent to Delgado and to the government on June 23, 2003, just after the supplemental Rule 11 hearing and prior to Delgado's sentencing on July 28, 2003, does not mention any facts in support of the firearm possession charge in Count Two.

**B.      The Suppression Hearings**

The suppression hearings that the government and the district court referred to during the supplemental Rule 11 proceeding, and that the court took judicial notice of, took place before the magistrate judge on March 9, 2003 and March 26, 2003. During the suppression proceedings, Delgado argued that the firearm seized from his rental car was inadmissible in the government's case-in-chief at trial because he had not validly consented to the

search of the car after agents arrested him and during the search of his apartment pursuant to a warrant.

At the hearing on March 26, 2003, a Drug Enforcement Administration ("DEA") agent testified that, based on cell phone conversations intercepted during the drug conspiracy investigation pursuant to a court order, the agents had reason to believe Delgado possessed a firearm when they executed the search and arrest warrants. In support of this testimony, the government played during the hearing four excerpts from recordings of three intercepted phone conversations between Delgado and others, all of which were conducted in Spanish. The government referred to the excerpts as recordings #316, #70, #71, and #572.

Based on his knowledge of the investigation, the DEA agent testified that Delgado was the person referred to in the calls as "Frank." The agent identified the person Delgado spoke to in one of the calls (#316) as the mother of Delgado's former wife, but did not ascribe any drug-related activity to her. The agent was not asked to identify any of the speakers in the second set of call excerpts (#70 and #71). However, in response to questioning about an apparent reference in the excerpts to a boat, the agent testified that Delgado's drug-trafficking activity included "coordinat[ing] possible shipments of narcotics by boat into Puerto Rico" and "contract[ing] people . . . to get boats for him and to work for him." Finally, the agent identified the person with whom

Delgado spoke in the third phone call (#572) as a co-defendant who worked with Delgado "in distributing drugs here in Puerto Rico." The transcripts of the suppression hearing contain no indication of when or in what context a firearm is mentioned in the call excerpts.

After the excerpts were played, the DEA agent testified that, during the search of Delgado's apartment, another agent asked Delgado whether he kept a firearm in a safe in his apartment, and Delgado replied that he kept a gun in the car. The agent testified that Delgado then identified the car key to the agents, who subsequently found a semi-automatic pistol in Delgado's rental car, which was parked outside the apartment. No drugs were seized during the search of the apartment or the car.

On March 27, 2003, the magistrate judge issued a report and recommendation to deny Delgado's motion to suppress the firearm, finding that Delgado had validly consented to the search of the car. The magistrate judge also noted that, "[b]ased on information acquired via [court-authorized] intercepts, the agents believed defendant carried a firearm" (footnote omitted). The district court adopted the report and recommendation on April 21, 2003.[5] Delgado's initial change-of-plea hearing took place one

---

[5]Delgado does not challenge the denial of his motion to suppress the firearm.

week later, on April 28, 2003, and the supplemental plea colloquy was held on June 20, 2003.

The transcript of the suppression hearing indicates that the government provided English-language translations of the intercepted phone calls that were played during the hearing to both Delgado and the magistrate judge. After the calls were played, the government provided copies of the translations to the court interpreter for certification.[6] The magistrate judge's report and recommendation, which was issued the next day, on March 27, 2003, further indicates that "[t]he English language translations of the [recordings played during the hearing] shall be certified by the court interpreter and be made part of the record."[7] However, the record on appeal contains no trace of the translations, certified or uncertified, nor any indication that they were ever made part of the record below.

---

[6]Delgado raised no objection to the accuracy of the translations during or after the suppression hearing.

[7]"All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." 48 U.S.C. § 864. See also D.P.R. R. 10(b) ("All documents not in the English language which are presented to or filed in this Court, whether as evidence or otherwise, shall be accompanied at the time of presentation or filing by an English translation thereof, unless the Court shall otherwise order.") (formerly D.P.R. R. 108.1, renumbered and approved as final rule effective April 5, 2004).

**C.       Government's Supplementation of the Record During Direct Appeal**

After oral argument in the instant appeal and upon notification by the district court of the absence of the English-language translations of the intercepted phone calls from the record, the government was unable to locate copies of the translations that had been provided to Delgado, the magistrate judge, and the court interpreter during the suppression hearing. Instead, the government moved before the district court on June 13, 2005 to supplement the record with newly translated transcripts of the intercepted phone calls, which were completed and certified on June 2, 2005, and to have those transcripts "transmitted expeditiously to the Court of Appeals." See Fed. R. App. P. 10(e)(2)(B) (district court may supplement the record "before or after [it] has been forwarded" to the court of appeals). The district court granted the motion on June 14, 2005,[8] and the translated transcripts have been provided to us.

**IV.**

**A.       Nature of the Firearm Possession Charge**

We first address Delgado's claim that the district court committed plain error by misinforming him of the nature of the firearm possession charge. The statute under which Delgado was

---

[8]On June 30, 2005, this court granted Delgado's motion for leave to file a response to the government's submission of the newly translated transcripts that had been transmitted to this court. We discuss that response below in Part IV.B.

-15-

charged and convicted of firearm possession, 18 U.S.C. § 924(c)(1)(A), provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, <u>in furtherance of any such crime, possesses a firearm</u>, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

(Emphasis added). In order to convict Delgado, the government would have had to prove at trial (1) that he committed the underlying drug-trafficking crime, (2) that he knowingly possessed a firearm, and (3) that he did so in furtherance of the specified drug-trafficking crime. See <u>United States</u> v. <u>Flecha-Maldonado</u>, 373 F.3d 170, 179 (1st Cir. 2004) (describing "basic elements" of § 924(c)(1) violation for using or carrying a firearm during and in relation to a drug-trafficking crime); <u>see</u> <u>also</u> <u>United States</u> v. <u>Cruz</u>, 352 F.3d 499, 509 (1st Cir. 2003) ("[G]iven the text of the statute, merely determining that [a defendant] was in possession of a [firearm] is not enough to support [a] conviction; we must also consider whether the weapon was possessed '<u>in furtherance of</u> . . . a drug-trafficking crime.'") (quoting § 924(c)(1)(A)) (ellipsis in original).

During both the initial plea colloquy on April 28, 2003 and the supplemental colloquy on June 20, 2003, the court correctly

-16-

described Count Two of the indictment as charging Delgado with possession of a firearm "in furtherance of" a drug-trafficking offense. However, when the court explained to Delgado the elements the government would have to prove at trial during the initial colloquy on April 28, 2003, it stated:

> Now, to be found guilty of this offense if a trial were to be held, the Government would have to prove . . . the count concerning the possession of the firearm in connection with the drug trafficking crime.

(Emphasis added.)[9] Delgado argues that, far from ensuring that he understood the elements of the firearm possession charge against him, the court misstated the requisite nexus between the firearm possession and the drug-trafficking offense, in violation of Rule 11(b)(1)(G) and his right to due process.

The statutory language prohibiting possession of a firearm "in furtherance of" the underlying crime was inserted into § 924(c)(1) by amendment in 1998. Congress thus "broadened § 924 to sweep in the mere possession" of firearms, in addition to the use or carrying of firearms, but "only when . . . possessed 'in furtherance of' the underlying crime." United States v. Castillo, 406 F.3d 806, 812 (7th Cir. 2005). As the House Report on the

---

[9]During the supplemental Rule 11 hearing on June 20, 2003, the government repeated the court's phrasing by stating that its evidence in support of a factual basis for the firearm possession charge included intercepted phone calls "in which in coded language [Delgado] in two of these calls, discussed the possession of the firearm in connection with the drug activities" (emphasis added).

amendment indicates, the "in furtherance of" element of a firearm possession charge imposes a "slightly higher standard" of liability than the nexus element corresponding to the different charges of using or carrying a firearm, which need only occur "during and in relation to" the underlying crime. H.R. Rep. No. 105-344, at 11 (1997) ("House Report"). To establish the "in furtherance of" requirement of a firearm possession charge under § 924(c)(1),

> [t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.

House Report at 12 (emphases added); see also United States v. Grace, 367 F.3d 29, 35 (1st Cir. 2004) (analyzing "in furtherance of" element of § 924(c)(1)); accord Castillo, 406 F.3d at 813-14 (interpretation of "in furtherance of" to mean "furthering, advancing or helping forward" comports with legislative history and purpose of § 924(c), as well as case law of all circuit courts) (citation omitted).

Delgado argues that "in furtherance of" means something distinct from "in connection with" when used to describe the relationship between possession of a firearm and the commission of a drug-trafficking crime. We agree that the two phrases have

-18-

different meanings, and that possession of a firearm "in furtherance of" a drug-trafficking crime suggests something more by way of nexus between the possession and the crime than the phrase "in connection with." Compare American Heritage Dictionary of the English Language 714 (4th ed. 2000) (defining "furtherance" as "[t]he act of furthering, advancing, or helping forward") with id. at 390 (defining "connection" as "[a]n association or relationship" or "[r]eference or relation to something else").[10] Rule 11(b)(1)(G), however, "does not require the court to explain the technical intricacies of the charges in the indictment." United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004). Ordinarily, a court may ascertain that a defendant is aware of the nature of the charge against him by reading the charge in the indictment to the defendant and obtaining his competent acknowledgment that he understands the charge. See, e.g., United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002) (finding "no error, let alone plain error," where "[t]he terms of the

---

[10]Two sentencing guidelines permit increases in a defendant's base offense level for possession of a firearm. See U.S.S.G. § 2K2.1(b)(5) (authorizing increase for possession of a firearm "in connection with" certain felony offenses) (emphasis added); U.S.S.G. § 2D1.1(b)(1) (authorizing increase for drug offenses "[i]f a dangerous weapon (including a firearm) was possessed"); see also U.S.S.G. § 2D1.1, cmt. n.3 (U.S.S.G. § 2D1.1(b)(1) "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.") (emphasis added).

-19-

indictment alone sufficed to put [the defendant] on notice of the charge to which he was pleading guilty. [The defendant] admitted he understood the charge and the court found him competent to plead.").[11]

Furthermore, we have recently recognized that the meaning of firearm possession "in furtherance of" a drug-trafficking crime is fluid. "One might expect with such a common criminal offense that the legal framework would be well settled, but, as is so often the case with general statutory terms, it is not." United States v. Felton, Nos. 02-2414, 03-1089, 03-1441, 2005 U.S. App. LEXIS 15607, at *17 (1st Cir. July 29, 2005). We therefore conclude that any error in the district court's use of "in connection with" to mean "in furtherance of," if error there was, was far from obvious. Cf. Gandia-Maysonet, 227 F.3d at 5 (court erred in "affirmatively . . . misstat[ing] the scienter element" through omission of carjacking statute's requirement of intent to kill or cause bodily harm).

Moreover, even if we were to assume, arguendo, that the court plainly erred by understating the nature of the nexus requirement of the firearm possession charge, Delgado has not

---

[11]While Delgado invokes his right to due process, he does not seriously argue that any error in the court's explanation of the charge rises to the level of a constitutional violation. In any event, the record amply demonstrates that "the [plea] colloquy was constitutionally sufficient to ensure that [Delgado] made an intelligent plea." See Medina-Roman, 376 F.3d 1, 7 (1st Cir. 2004).

established that the difference in degree between the two formulations affected his substantial rights.  See Negrón-Narváez, 403 F.3d at 37; see also United States v. Hernández-Albino, 177 F.3d 33, 41 (1st Cir. 1999) (assuming, arguendo, that court's failure to include "in relation to" in jury instruction for charge of carrying a firearm "during and in relation to" a drug-trafficking offense "was error and that the error was plain," defendant failed to show prejudice under plain error review).  During the initial colloquy on April 28, 2003, the court asked Delgado whether he had received a copy of the charges against him, as well as whether he had discussed those charges with counsel.  Delgado replied unequivocally that he had.  Both the indictment and the plea agreement that Delgado signed correctly use the statutory "in furtherance of" language to describe the firearm possession charge.

To be sure, "Rule 11 is disserved" if a defendant chooses whether to proceed to trial "based on a misappreciation of the weight -- light or heavy -- of the government's burden as to a charge and its elements."  United States v. Medina-Roman, 376 F.3d 1, 7 (1st Cir. 2004).  On one side of the balance, Delgado argues that the government's circumstantial evidence that he possessed a firearm "in furtherance of" a drug-trafficking offense was weak.[12]

---

[12]As we discuss below in Part IV.B., based on our review of the entire record, we reject Delgado's independent claim that there was no factual basis for the "in furtherance of" element of the firearm

-21-

On the other side of the balance rest the firearm itself, which was admissible at trial, and Delgado's admission, supported by the government's wiretap and other proffered evidence, that he conspired to smuggle cocaine by speed boat into Puerto Rico for further distribution and sale. Given the weight of the evidence as a whole, Delgado fails to demonstrate a reasonable probability that, although he entered a guilty plea when the charge against him was explained as possession of a firearm "in connection with" a drug-trafficking crime, he would have chosen to face trial if the charge had instead been described as possession of a firearm "in furtherance of" a drug-trafficking crime. See Dominguez-Benitez, 124 S. Ct. at 2336.

**B.          Factual Basis for the Firearm Possession Charge**

Delgado argues that apart from the court's alleged misstatement of the "in furtherance of" element of the firearm possession charge, the court erred by accepting and entering judgment on his guilty plea in the absence of a sufficient factual basis, in violation of Rule 11(b)(3). Delgado does not dispute that he knowingly possessed a firearm, nor that he committed a drug-trafficking crime by participating in the drug conspiracy to which he pled guilty in Count One. He challenges only the factual basis for the "in furtherance of" element of the firearm possession charge, arguing that the government's proffered evidence during the

possession charge.

-22-

supplemental Rule 11 hearing fails to establish the requisite nexus between his possession of the firearm and his drug-trafficking offense.

When determining whether a sufficient factual basis exists to support a guilty plea, the question before the court "is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence." Gandia-Maysonet, 227 F.3d at 6. In other words, there must be "an admission, colloquy, proffer, or some other basis for thinking that the defendant is at least arguably guilty." Id.

As the government recognized when it sought a supplemental Rule 11 hearing in its motion of May 2, 2003, no facts supporting the firearm possession charge (apart from those also supporting the underlying drug-trafficking charge) were set forth during the initial plea colloquy on April 28, 2003, and no such facts appeared in the signed statement of facts attached to Delgado's plea agreement. When the court held the supplemental Rule 11 hearing on June 20, 2003, the government stated only, in conclusory fashion, that Delgado had "discussed the possession of the firearm in connection with [his] drug activities" during conspiracy-related phone calls, and referred the court to the record of the hearings on Delgado's suppression motion.

Although the record of those hearings contains evidence that Delgado possessed a firearm, it does not contain the government's promised evidence demonstrating the requisite nexus between Delgado's firearm possession and the drug conspiracy. While the translated transcripts of the intercepted phone calls that were played in Spanish during the suppression hearing may very well have contained relevant facts, those transcripts are not part of the record of that hearing.

The magistrate judge's tangential observation in his March 27, 2003 report and recommendation on Delgado's suppression motion that, "[b]ased on information acquired via [court-authorized] intercepts, the [DEA] agents believed defendant carried a firearm" (footnote omitted), establishes only what Delgado does not dispute: that he possessed a firearm. Although the phone calls were intercepted pursuant to a court order as part of a drug conspiracy investigation, the government played the calls during the suppression hearing only to support the DEA agent's testimony that the agents had reason to believe Delgado had a firearm when they elicited his valid consent to their search of his rental car, not to show that Delgado possessed the firearm for any particular purpose. Indeed, the transcript of the hearing fails to indicate when and in what context the phone calls refer to a firearm. The facts and circumstances of the firearm's seizure from Delgado's rental car, which was parked outside his apartment, in which no

drugs or drug activity were detected, also shed no light on the relationship between the firearm and Delgado's drug-trafficking activities.

As a result of these gaps in the record, the court's judicial notice of the suppression motion proceedings -- taken at the government's urging -- contributes nothing to the factual basis for the "in furtherance of" element of the firearm possession charge; there simply were no pertinent facts in the record of which to take notice. Finally, the presentence investigation report, from which the district court could have gleaned a factual basis "[b]efore entering judgment on [Delgado's] guilty plea," Fed. R. Crim. P. 11(b)(3), contains no facts whatsoever relating to the firearm possession charge. Under these circumstances, the court had no way of evaluating the factual basis for Delgado's guilty plea.

Because the government's proffered evidence lacked a rational basis in facts for the "in furtherance of" element of the firearm possession charge, the district court erred in determining that there was an adequate factual predicate for Delgado's guilty plea. Although discovery of the error required examination of the suppression hearing record, we could readily discern the absence of the facts represented by the government to exist in that record.

It is not enough, however, for a defendant facing plain error review of his claim to establish that an "error" occurred and

that it was "plain." He must also show that the error "affected his substantial rights, and that it seriously impaired the fairness, integrity, or public reputation of the proceeding." Negrón-Narváez, 403 F.3d at 37.

"[I]n assessing the effect of Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone . . . ." Dominguez-Benitez, 124 S. Ct. at 2338. Based on our review of the entire record, we conclude that despite the deficiencies in the government's proffer of evidence, Delgado was not "in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct [did] not actually fall within the charge." Ventura-Cruel, 356 F.3d at 59-60 (internal quotation marks omitted). To the contrary, as we discuss below, the record shows that the government disclosed evidence to Delgado that was sufficient to support the "in furtherance of" element. Delgado thus fails to convince us that there is a "reasonable probability that, but for" the court's inability to consider that evidence during the plea proceedings, "he would not have entered the [guilty] plea." Dominguez-Benitez, 124 S. Ct. at 2336.

The record as supplemented after oral argument now contains certified English translations of the intercepted phone calls played during the suppression hearing. In his response to the government's submission of the newly translated transcripts,

-26-

Delgado does not dispute the accuracy of the government's translations or seek to strike them from the record; rather, he argues that the government's belatedly filed translations only serve to confirm its lack of evidence supporting a factual basis for his guilty plea because the certified translations contain no explicit reference either to a firearm or to Delgado's drug-trafficking activities.

We are aided in our evaluation of the likelihood of a different outcome by one additional document, which we have excavated from the record without the assistance of the parties. That document is the government's "Informative Motion Regarding Anticipated Evidence" as to Delgado and his co-defendants, filed on April 9, 2003, after the suppression hearings took place before the magistrate judge on March 9 and 26, 2003 and before the district court adopted the magistrate judge's report and recommendation to deny Delgado's motion to suppress on April 21, 2003.[13] In its informative motion, the government stated its intent to prepare and provide to Delgado a single compact disc containing the three recorded phone calls purportedly relating to Delgado's possession of a firearm. The motion then provides brief descriptions of the

_____

[13]Because there is no indication in the record that the government or the district court referred to or relied on the informative motion to support a factual basis for Delgado's guilty plea at the time of the supplemental Rule 11 hearing or before entry of the judgment of conviction, we consider the motion only at the prejudice stage (rather than the error stage) of our plain error analysis.

contents of each phone call.  No transcripts, whether in Spanish or English, are attached to the motion.

Contrary to Delgado's argument, the contents of the translated transcripts provide a sufficient factual basis for the "in furtherance of" element of the firearm possession charge to which Delgado pled guilty.  The descriptions in the government's informative motion further confirm the existence of a factual basis for Delgado's guilty plea.  We set forth the descriptions of the intercepted phone calls contained in the informative motion, juxtaposed with the newly filed translations of the calls, below:[14]

> **CALL EXCERPT #316 (recorded September 25, 2001):**
>
> **Informative Motion (April 9, 2003):**
>
> Frank tells Chris [Liliana's mother] that he has to carry a gun because he has hundreds of problems.
>
> (Alteration in original.)
>
> **Certified Translation (June 2, 2005):**
>
> [DELGADO]:  Because I tell her, 'look, look I'm going to take care of everything.'  And because she doesn't understand she starts a fight with me, look I don't even want to get near the house, I tell her.  You go ahead and eat, do whatever you want.  I don't even

---

[14]During the supplemental Rule 11 hearing on June 20, 2003, the government represented that "at least two" of the three intercepted phone calls played during the suppression hearing supported a factual basis for Delgado's guilty plea.  Because the government did not identify which two calls it relied upon, we review all three phone calls.

-28-

> want to come here if you drive me crazy. I have my own problems.

[UNIDENTIFIED FEMALE]: But why?

[DELGADO]: Personal problems. Because everything is a fight. I tell her 'look I got this problem'. She (INAUDIBLE) here, go around here armed and all that it's not, here it's not easy. I have to go armed and she knows that I have certain problems over here. An [sic] problems not because I have the problems, problems because, because the people let me down.

As we have discussed, during the suppression hearing on March 26, 2003, the DEA agent testified that Delgado was the person referred to as "Frank" in the intercepted phone calls. The agent also identified the woman with whom Delgado spoke in call excerpt #316 as the mother of his former wife, but did not attribute any drug-related activities to her.

**CALL EXCERPTS #70 AND #71 (recorded September 15, 2001):**

**Informative Motion (April 9, 2003):**

Frank talks with "Rafa" about [a] problem with another man and threatens that he will lose his temper and do it right there.

**Certified Translation (June 2, 2005):**

[DELGADO]: Oh, I'm over here by Carolina.

[RAFA]: Oh, I saw, I saw, I saw your little boat over there.

[DELGADO]: Yes, it's outside, yes.

[RAFA]: Yes but I'm calling you because, you know, there's a guy one of

-29-

                         those    crazy    guys    there.
                         That . . .

[DELGADO]:    Oh.

[RAFA]:       Without me, without me asking he
              started to talk about you, you
              know.  So you be very careful,
              brother.

[DELGADO]:    What did the man say?

[RAFA]:       Well he says that the little boat
              is his.  And that you owe him some
              money, for a job that he did and
              that he went to some place, you
              know.

[DELGADO]:    The man was talking; he talked a
              little too much the fucker.

[. . . ]

[DELGADO]:    The little fat guy, did he already
              leave your place?

[RAFA]:       No, no, he is here (INAUDIBLE) I'm
              over here with him, wait a moment.

[DELGADO]:    Ujum.

[RAFA]:       For you.

[UNIDENTIFIED MALE]:  Hello.

[DELGADO]:    Hello.

[UNIDENTIFIED MALE]:  Yeah buddy.

[DELGADO]:    Yes, look.

[UNIDENTIFIED MALE]:  Go ahead.

[DELGADO]:    Listen, tell that man that, that,
              that if he keeps that up I [sic]
              going to have to do my own thing,
              man.  He's going to get it.

-30-

```
[UNIDENTIFIED MALE]:  Ujum, yes.  I'm going to
                      talk with, I'm going to talk with
                      the son, I'm going to tell him.

[DELGADO]:  (INAUDIBLE) He's making me, he's
            compromising me.  The, the son
            knows what he did.  Yes, the son
            knows what he did and I could have
            taking [sic] it out and done
            something.

[. . .]

[UNIDENTIFIED MALE]:  Yeah, no, no, brother,
                      yes.  I'm going to deal with that.

[DELGADO]:  (INAUDIBLE)   If  I  lose  the
            (INAUDIBLE) If I lose the table
            (PHONETIC)  I'm  going  to  do  it
            right there brother.
```

The agent did not identify any of the voices in call excerpts #70 and #71 during the suppression hearing, but, apparently in response to questioning about Delgado's use of boats, testified that Delgado "coordinated possible shipments of narcotics by boat into Puerto Rico" and "contracted people . . . to get boats for him and to work for him."

**CALL EXCERPT #572 (recorded October 8, 2001):**

**Informative Motion (April 9, 2003):**

CHUCHO is reluctant to go there because of a problem he had.  Frank tells CHUCHO that he will get him, and reminds him that he is "always equipped with his tools"

**Certified Translation (June 2, 2005):**

```
[UNIDENTIFIED MALE]:  Yes but I don't want to
                      stop by over there because, come
                      over here because I can't stop by
                      there
```

```
[DELGADO]:  Oh.

[UNIDENTIFIED MALE]:  (INAUDIBLE) Get in by
                     (INAUDIBLE) around the back and
                     I'll take care of you

[DELGADO]:  //INTERRUPTS// Is that I'm coming
            with, I'm coming with (INAUDIBLE)
            all the time, remember.
```

At the suppression hearing, the DEA agent identified "Chucho" as one of Delgado's co-defendants, who worked with Delgado "in distributing drugs here in Puerto Rico."

As Delgado correctly points out, the only translated phone call excerpt that contains an explicit reference to a weapon of any kind is Delgado's conversation (#316) with his former wife's mother, whom the record does not reveal to be involved in Delgado's drug-trafficking activities. Delgado also notes that although he refers to "problems" in call excerpt #316, the DEA agent testified during the suppression hearing that he was not personally aware of any "problems" that Delgado had in his drug-trafficking activities. We add that the translated transcript of call excerpt #572 indicates that any reference to Delgado's "tools," as described in the informative motion, is "inaudible."

While the government's evidence supporting a factual predicate for the "in furtherance of" element, as contained in the translations of the phone calls, may not be iron-clad, the factual basis for a guilty plea need only consist of "enough evidence so that the plea has a rational basis in facts" -- that is,

"some . . . basis for thinking that the defendant is at least arguably guilty," Gandia-Maysonet, 227 F.3d at 6.  Further, the factual basis for certain elements may be inferred from other facts admitted by the defendant or proffered by the government.  See United States v. Marrero-Rivera, 124 F.3d 342, 352 (1st Cir. 1997) (inferring "factual predicate for the requisite mens rea" from "all the evidence alluded to at the Rule 11 hearing"); see also Gandia-Maysonet, 227 F.3d at 6 (same).

The translated phone call excerpts, whose accuracy Delgado has never challenged, include references to Delgado's "problems because, because the people let me down," which require him to "go around here armed."  These references could fairly be read to support the inference that Delgado possessed the firearm seized from his rental car in order to resolve problems hindering the progress of the drug conspiracy in which he was involved.  The excerpts also contain references to people who could reasonably be inferred to be co-conspirators in a plan to use boats to smuggle drugs; the references in the translations to people who variously "talk too much," "compromis[e] me," and are "going to get it," further suggest that Delgado possessed the firearm either to protect himself when "people let [him] down" or to make threats of force to eliminate potential obstacles to the success of the conspiracy.  These inferences are reinforced by the government's descriptions in the informative motion, the accuracy of which

Delgado has also never challenged, which contain explicit references to a "gun" and Delgado's "tools," again in contexts supporting the inference that Delgado possessed a firearm to promote the drug conspiracy in which he participated.

Because the record as a whole contains a "rational basis in facts" to support Delgado's guilty plea, Gandia-Maysonet, 227 F.3d at 6, Delgado fails to establish prejudice resulting from the court's inability to evaluate the factual basis proffered by the government during the proceedings below.

## V.

Because Delgado has not met his burden under plain error review on either of his claims of error in the plea proceedings below, we **affirm** Delgado's conviction for possession of a firearm in furtherance of a drug-trafficking offense.

**So ordered**.