# United States Court of Appeals
## For the First Circuit

No. 12-1965

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID FIGUEROA-OCASIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Kayatta and Barron,
Circuit Judges.

Cathryn A. Neaves, on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States
Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney,
Chief, Appellate Division, were on brief, for appellee.

October 16, 2015

**KAYATTA**, <u>Circuit Judge</u>.  The district court in this case accepted the defendant's straight plea of guilty to firearms charges without taking all the steps necessary to determining that the plea was entered intelligently and knowingly.  The district court also employed an erroneous illustration of the requisite mens rea in order to defuse the defendant's suggestion that he lacked the knowledge needed to support a conviction, thereby leaving us with a record in which it appears that a person pleaded guilty because he was misinformed about the elements of the crime. Finally, the district court also committed procedural error at sentencing by incorrectly calculating the applicable sentencing guideline range.  We therefore vacate the conviction and the sentence and remand for proper consideration of the proposed plea and such further proceedings as are then called for.

## I.   <u>Background</u>

David Figueroa-Ocasio ("Figueroa") and three others were charged in a four-count indictment alleging various gun offenses--namely, violation of 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm); § 922(j) (possession of a stolen firearm); § 922(o) (possession of a machine gun); and § 922(q)(2)(A) (possession of a firearm in a school zone).  The charges arose from a traffic stop that occurred at 2:20 a.m. on January 9, 2012, in San Juan, Puerto Rico.  At the time of the

stop, Figueroa was seated as a passenger behind the driver of the vehicle. The record does not indicate who owned the vehicle. Police found inside the vehicle three firearms, all Glock pistols--two during the traffic stop and one later, during an inventory at the municipal police precinct.[1] It is not clear where the police found the first firearm, later determined to have been stolen, although the record suggests it may have been stashed between the vehicle's center console and the front seat.[2] The second firearm was found somewhere "in the floor of the car." The record provides no evidence as to where in the vehicle the police found the third firearm, which had been adapted to fire in fully automatic mode. None of the firearms were found on the persons of any of the defendants. There was no evidence as to who owned the firearms. Although the record states that the authorities conducting the search asked whether any of the defendants possessed firearms licenses, the record does not indicate how the defendants answered.

Figueroa was charged with possession of all three firearms in count 1, the "felon in possession" count. The other defendants were charged with aiding and abetting. In the other

---

[1] The inventory search also turned up two loaded magazines.

[2] The record states that a "firearm's magazine" was found "between the center console and the front passenger's seat," but it later appears to refer to this magazine as "a Glock pistol, Model 27, serial number DBW749 . . . reported stolen on December 26, 2011[.]" It is not clear whether both a magazine and a firearm were found between the center console and the front seat.

three counts, all four defendants were charged with possession of the respective firearms and with aiding and abetting.

## II. <u>The Change of Plea Hearing</u>

On March 1, 2012, Figueroa appeared in the district court to enter a straight plea of guilty to the indictment.[3] The hearing was conducted with the assistance of a court interpreter.

The hearing commenced uneventfully. Figueroa made it clear, both through counsel and personally, that he wanted to plead guilty. Defense counsel stated that his client "expressed to us that he would plead guilty rather than go to trial." The district court then confirmed with counsel that Figueroa was "pleading guilty to all the counts[,]" a "[s]traight plea." Defense counsel confirmed that Figueroa was "pleading guilty, period." Next, the court asked Figueroa directly whether he had "made a conscious decision to plead guilty to every single count of the Indictment. . . . Is that what you want to do, sir?" Figueroa answered, "Yes." The court asked Figueroa whether he was competent to plead, whether he believed that defense counsel was competent, and whether he had had ample time to discuss his case with counsel. The court

---

[3] The other defendants pleaded guilty separately, each pursuant to largely identical plea agreements. The offense facts stated in these plea agreements and in the subsequently filed presentence investigation reports are identical.

did not directly ask Figueroa whether he was entering his plea voluntarily and of his own free will.

The district court went on to advise Figueroa of certain rights "that are waived when [one] plead[s] guilty[,]" including the right to trial by jury, the right to be convicted only upon proof beyond a reasonable doubt, the presumption of innocence, the right to cross-examination, the right to testify, and the right to remain silent. The court failed to advise Figueroa of the "right to plead not guilty, or having already so pleaded, to persist in that plea[,]" the "right to be represented by counsel--and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding[,]" and the right "to compel the attendance of witnesses[.]" Fed. R. Crim. P. 11(b)(1)(B), (D), (E). The court concluded this initial colloquy by asking, "[D]o you still want to plead guilty in this case?" Figueroa answered, "Yes."

The district court then summarized the indictment. The court summarized count 1 thus: "[Y]ou are a prohibited person, a convicted felon, and you were in possession of a firearm." Summarizing count 2, the court stated, "[Y]ou possessed stolen firearms or you aided and abetted others in possessing stolen firearms." The court then described count 3 as "the illegal possession of a machine gun or aiding and abetting others in the

possession of a machine gun." Counsel interjected, "It's an automatic gun," whereupon the court amended its explanation of the charge, stating, "It's an automatic gun, not a machine gun."[4] Finally, the court described count 4 as charging that "firearms were possessed in a school zone or that you aided and abetted others in possessing firearms in a school zone." The court asked Figueroa whether he understood "that those are basically the charges," although it did not ask whether Figueroa understood the charges themselves. The court did ask Figueroa whether he understood that "the Government has to prove . . . who you are and your relationship to these facts alleged in the Indictment so that we can make an association between the facts alleged and you." Figueroa agreed that he understood. The court also asked Figueroa whether he understood that the Government had the burden of proving that all the actions alleged in the indictment "were entered into by you knowingly, willfully and unlawfully . . . with a bad purpose to disobey or disregard the law, and not because of mistake, accident, or other innocent reason. . . . [Y]ou were doing something that the law forbids and you knew it." Figueroa again agreed that he understood.

---

[4] Count 3 actually alleged that the defendants, "aiding and abetting each other, did knowingly and unlawfully possess, a machinegun . . . in violation of [18 U.S.C. § 922(o)]." 18 U.S.C. § 922(o)(1) makes it unlawful to transfer or possess a machine gun.

The district court then reviewed in detail the Government's burden of proof as to each of the counts. With regard to count 2, possession of a stolen firearm, the following exchange occurred:

> THE COURT: Then another -- Count Two would be that one of those firearms . . . had been shipped or transported in interstate commerce knowing or having reasonable cause to believe that the firearm had been stolen.
>
> Do you understand that?
>
> THE DEFENDANT: He says he didn't know it was stolen.[5]
>
> THE COURT: You did not buy from an armory with a license for example?
>
> [DEFENSE COUNSEL]: No.
>
> THE DEFENDANT: No, no.
>
> THE COURT: So would it be fair to say that there was a possibility when you bought it or wherever you bought it or found it or took it, God knows how it got there, it could have been stolen?
>
> THE DEFENDANT: Yes.

---

[5] It is not clear from the context to whom "he" refers; "he" could mean either a co-defendant, or Figueroa, if the interpreter was telling the court what Figueroa said, instead of translating Figueroa's statement word-for-word, as sometimes happens. Nothing in the record indicates that the other defendants were present at Figueroa's change of plea hearing, and there would have been no reason for them to be there, as they had change of plea hearings on different days.

With regard to count 4, alleging possession of a firearm in a school zone, the colloquy ran as follows:

> THE COURT:  Okay.  And . . . on top of that, you and the others unlawfully possessed in and [a]ffecting interstate commerce the firearms and ammunition that we have been talking about within a distance of 1,000 feet of the ground of the Sagrado Corazon Academy school.  I guess it's in Santurce?
>
> THE DEFENDANT:  Yes.
>
> [DEFENSE COUNSEL]:  Yes.
>
> THE COURT:  A place that you had reason to believe was a school zone.
>
> [DEFENSE COUNSEL]:  The client accepts that that happened.  He said it was a coincidence.
>
> THE COURT:  But he knew there was a school there?  Everybody knows there's a school, Sagrado Corazon, in Santurce.  Well, it's common knowledge.  You can see the school from the street.
>
> Do you understand that, sir?
>
> THE DEFENDANT:  Yes.

The court subsequently summarized the indictment with a series of confusing questions that, as we explain in part IV.A.2 of this opinion, eliminated the mens rea element from the charges and otherwise produced meaningless replies in an exchange that was typical of an apparently rushed and pro forma approach to the proceeding:

- 8 -

THE COURT:  Okay.  Do you have any doubt about the charges that you're pleading guilty to, possessing firearms, being a convicted felon?  Possessing one of those firearms that happened to be stolen?  Possessing one of those firearms that happened to be an automatic firearm converted or otherwise, and it so happened all these firearms were possessed in a school zone?

Do you have any doubt about that?

THE DEFENDANT:  Si.

THE COURT:  No doubt?

THE DEFENDANT:  Yes.

THE COURT:  No doubt?  Do you have a doubt or no doubt?  No doubt?

THE DEFENDANT:  No.

The court did not explain aiding and abetting liability to Figueroa.

Instead, the district court moved on to sentencing, explaining the possible penalties, including forfeiture, fines, and supervised release, for the charged offenses, and confirming that Figueroa understood.  The court also explained that some of the sentences could be consecutive and that a sentence could be imposed within, above, or below the range calculated under the Sentencing Guidelines or as determined by the court, within its discretion, according to the sentencing statute.  Figueroa confirmed that he understood.

- 9 -

The Government then proffered the facts it would have offered at trial. Entirely absent from the Government's proffer was any specific allegation of knowledge or intent as to any element of any of the charged offenses. Also absent from the Government's proffer was any specific allegation that Figueroa was in possession or constructive possession of a firearm at any time or, for that matter, that he knew or had reasonable cause to know there were firearms in the vehicle.

Upon completion of the Government's proffer, the district court continued its examination of Figueroa:

> THE COURT: Do you admit that these facts occurred as outlined by the prosecutor, sir?
>
> THE DEFENDANT: Yes.
>
> THE COURT: So you, aided and abetted by others, or others aiding and abetting you, whatever way you want to call it, were in possession of these firearms in that car?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Do you still want to plead, sir?
>
> THE DEFENDANT: (Nodding head up and down.)
>
> . . .
>
> THE COURT: Well, I will accept your guilty plea to these four counts[.]

While the district court asked Figueroa whether he had been subjected to force, threats, or inducements to plead, and Figueroa denied having been, the court did not make an express finding on the record as to whether Figueroa's plea was knowing and voluntary, nor did it make a finding as to whether there was a sufficient factual basis for the plea.

### III.  The Sentencing Hearing

A Presentence Investigation Report (PSR) was issued on May 2, 2012.  Applying the November 1, 2011, version of the United States Sentencing Guidelines Manual (USSG), the PSR grouped all four counts together under USSG § 3D1.2(a) because they involved the same transaction.  The PSR found a base offense level of 22 under USSG § 2K2.1(a)(3), because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine and Figueroa had committed the offense after a felony conviction for a crime of violence.  The PSR added 2 levels under USSG § 2K2.1(b)(1), because the offense involved 3 firearms and another 2 levels under USSG § 2K2.1(b)(4), because one of the firearms was reported stolen.[6]  With a 2-level reduction for

---

[6] Under Application Notes, comment 8(B), USSG § 2K2.1(b)(4) "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen[.]"

acceptance of responsibility, Figueroa's total offense level was 24.

The PSR assigned Figueroa 1 criminal history point for a prior conviction and an additional 2 points under USSG § 4A1.1(d), because the instant offense had been committed while Figueroa was on probation. A total of 3 criminal history points put Figueroa in Criminal History Category (CHC) II, yielding a guideline sentence range of 57 to 71 months' imprisonment.[7]

The sentencing hearing was held on July 5, 2012. Defense counsel stated on the record that he had "no issues" with the PSR. After summarizing the facts as detailed at the change of plea hearing and in the PSR, the district court took Figueroa's allocution. The Government recommended a sentence of 71 months.

The district court then requested that counsel join it in a side-bar conference to discuss the requirement under 18 U.S.C. § 924(a)(4) that any sentence imposed for violation of 18 U.S.C. § 922(q)--here, Figueroa's count 4--not run concurrently with any other term of imprisonment. Grouping only counts 1-3, the court stated that the guideline range for the grouped counts was 57-71

---

[7] The maximum statutory term of imprisonment for violation of 18 U.S.C. § 922(g),(j), and (o), as alleged in counts 1 through 3, is 10 years' imprisonment. 18 U.S.C. § 924(a)(2). The maximum statutory term of imprisonment for violation of 18 U.S.C. § 922(q), as alleged in count 4, is 5 years. 18 U.S.C. § 924(a)(4).

months and, after initially implying that Figueroa's § 922(q) violation (count 4) carried a mandatory sentence of 60 months, the court later characterized 60 months as a "high end" sentence for a § 922(q) offense. The court then calculated the consecutive sentence to be imposed for violation of 18 U.S.C. § 922(q), concluding in conformity with USSG § 2K2.5 that, given a total offense level of 6 for the § 922(q) violation and Figueroa's CHC of II, the guidelines range of imprisonment was 1-7 months.[8] Concurring with the Government's recommendation, the court imposed a sentence of 71 months' imprisonment for grouped counts 1-3 and a consecutive sentence of 7 months' imprisonment for count 4, the 18 U.S.C. § 922(q) count, resulting in a total sentence of 78 months' imprisonment.

As we will explain, the district court erred in assuming that the requirement that count 4's sentence run consecutively prevented the court from including count 4 among the grouped counts. In fact, the PSR had properly grouped all four counts together. Moreover, the record gives reason to doubt that the district court recognized that, even under its mistaken

---

[8] The court arrived at the total offense level by starting with the statutory base offense level of 6, adding 2 levels because Figueroa's specific § 922(q) violation was unlawful possession of a firearm in a school zone, and applying a 2-level reduction for acceptance of responsibility. See USSG § 2K2.5.

understanding of the grouping rules, a 78-month sentence would have been a high-end guidelines sentence.[9]

Playing the role of a potted plant, defense counsel offered no objection throughout the proceedings, and then on appeal filed an Anders[10] brief, which we rejected, ordering that the appeal proceed with counsel.

## IV.  Discussion

Figueroa argues that the district court erred in accepting his plea because the record does not show that his plea was entered intelligently and knowingly.  He also argues that the court committed procedural error by imposing a sentence contrary to the guidance provided by USSG §§ 2K2.5 and 3D1.1.  Finally, Figueroa alleges ineffective assistance of counsel.  These arguments were not raised below, so ordinarily, as Figueroa here concedes, we would review for plain error, see United States v. Pagán-Ferrer, 736 F.3d 573, 593 (1st Cir. 2013), cert. denied sub nom. Vidal-Maldonado v. United States, 134 S. Ct. 2839 (2014); United States v. Borrero-Acevedo, 533 F.3d 11, 15 n.4 (1st Cir.

_____

[9] At sidebar, the district court characterized "[s]even more months" for count 4 as "a bargain, if you think."

[10] In Anders v. California, 386 U.S. 738 (1967), the Supreme Court noted that an attorney may, pursuant to certain procedural requirements, move to withdraw on appeal if the attorney concludes after a "conscientious examination" of the client's case that no non-frivolous grounds for appeal exist.  Id. at 744.

2008) (noting that the U.S. Supreme Court has confirmed that unpreserved claims of plea-process error are subject to plain error review (citing United States v. Vonn, 535 U.S. 55, 58–59, 61, 62 n. 4 (2002); United States v. Gandia-Maysonet, 227 F.3d 1, 5 (1st Cir. 2000))).

Inexplicably, however, the Government's brief does not respond to the issues presented in Figueroa's brief, including the allegations of error under Federal Rule of Criminal Procedure 11, which governs the plea process, and under USSG §§ 2K2.5 and 3D1.1, but responds rather to the issues raised in a previously filed Anders brief. The Government also does not address what standard of review should apply. We have stated that "[w]hen the government fails to request plain error review, we, and many of our sister circuits, review the claim under the standard of review that is applied when the issue is properly preserved below." United States v. Encarnación-Ruiz, 787 F.3d 581, 586 (1st Cir. 2015) (citing United States v. Tapia-Escalera, 356 F.3d 181, 183 (1st Cir. 2004)). On the other hand, even if the Government had made an affirmative concession as to the standard of review, we would not be bound by it. See Borrero-Acevedo, 533 F.3d at 15 n. 3 (citing United States v. Mescual-Cruz, 387 F.3d 1, 8 n. 2 (1st Cir. 2004)). In any event, we believe Figueroa has met the more stringent plain error standard, and so that is the standard under which we proceed.

## A.   The Sufficiency of the Plea

### 1.   Legal standard

To show plain error, a defendant must demonstrate "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"  Borrero-Acevedo, 533 F.3d at 15 (alterations in original) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)); accord United States v. Padilla, 415 F.3d 211, 218 (1st Cir. 2005) (en banc) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

"In applying plain error analysis in guilty plea cases, a defendant must, in order to demonstrate that his substantial rights were affected, 'show a reasonable probability that, but for the error, he would not have entered the [guilty] plea.'"  United States v. Caraballo-Rodriguez, 480 F.3d 62, 69 (1st Cir. 2007) (alteration in original) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)); see also United States v. Delgado-Hernandez, 420 F.3d 16, 28 (1st Cir. 2005) (finding that deficiencies in the Government's factual proffer do not create plain error if defendant is otherwise aware of Government's evidence against him).  "A defendant must thus satisfy the judgment

of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." Caraballo-Rodriguez, 480 F.3d at 69-70 (quoting Dominguez Benitez, 542 U.S. at 83); see also Ramirez-Burgos v. United States, 313 F.3d 23, 29 (1st Cir. 2002) ("An error affects substantial rights if it was 'prejudicial,' meaning that the error 'must have affected the outcome of the district court proceedings.'" (quoting United States v. Olano, 507 U.S. 725, 734 (1993))).

### 2. The plea colloquy did not establish that Figueroa's plea was knowing and voluntary

Federal Rule of Criminal Procedure 11 requires that the district court make the defendant aware of "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). Indeed, "ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial" is "a 'core concern' of Rule 11." Gandia-Maysonet, 227 F.3d at 3 (citations omitted). And "reviewing courts have been willing to intervene" when, as here, an error in the plea process implicates that "core concern." Id. In United States v. Gandia-Maysonet, for example, we vacated a plea as not knowing and voluntary when the district court and the plea agreement both misstated the scienter requirement for carjacking. Id. at 4-6.

- 17 -

We found the misstatement in <u>Gandia</u> to be obviously erroneous. See <u>id.</u>  The same is true in this case.

Here, the court did not ensure that Figueroa understood what the Government needed to prove against him to support a conviction.  There was no plea agreement to evidence that Figueroa had reviewed and acknowledged prior to the hearing the nature of the charges and the significance of pleading guilty.  At the hearing, the court did not ask Figueroa whether he had read the indictment, nor whether he had reviewed it with his attorney and understood it.[11]  The court muddied what thin record there was by repeatedly asking confusing, compound, and/or internally contradictory questions and by failing to follow up sufficiently on Figueroa's denials or ambiguous statements regarding the elements of the charged offenses.  Given all the attendant circumstances, we believe the record leaves significant doubts about Figueroa's understanding of the nature of all the charges.

Moreover, the plea colloquy itself did not provide illumination.  The court did not adequately explain, and misstated the Government's burden in proving, the requisite mens rea.  While the court explained in general terms, and Figueroa acknowledged he understood, that the Government had the burden to prove that the

_____

[11]  The district court asked only, "You have seen the indictment, correct?"

- 18 -

acts alleged in the indictment "were entered into by [Figueroa] knowingly, willfully and unlawfully . . . with a bad purpose to disobey or disregard the law, and not because of mistake, accident, or other innocent reason," the court's subsequent particularized explanations of the charges repeatedly stated a lesser burden.

For instance, count 2, the "stolen firearms" charge, required proof that Figueroa "knew or had reasonable cause to believe that the firearm[] [was] stolen." See United States v. Ridolfi, 768 F.3d 57, 64 (1st Cir. 2014) (citing 18 U.S.C. § 922(j)). Figueroa, reacting to the court's explanation of count 2, actually denied knowledge that the subject firearm was stolen. In response, the court posed an alternative notion of mens rea not found in the applicable statute, asking whether "there was a possibility when you bought it or wherever you bought it or found it or took it, God knows how it got there, it could have been stolen?" Figueroa answered in the affirmative, and the court then moved on as if the answer were sufficient. We are thus left with a record on which it appears that Figueroa denied knowing that the gun was stolen, yet was coaxed into thinking it sufficient that there was a mere possibility that it had been stolen.[12]

---

[12] It also is not clear from this exchange whether Figueroa was admitting he bought, took, or found the firearm, or that it was in the vehicle "God knows how[.]"

The district court also misstated the requisite mens rea with respect to count 4, "the school zone" count. Under 18 U.S.C. § 922(q)(2)(A), "[i]t shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone."[13] See United States v. Guzmán-Montañez, 756 F.3d 1, 12 (1st Cir. 2014) (defendant charged under 18 U.S.C. § 922(q)(2)(A) must have known or reasonably should have known he was in a school zone). Figueroa did not admit, nor was there any proffer stating, that he possessed a firearm knowing or having reasonable cause to believe he was in a school zone. At most, Figueroa indicated only that his presence in what turned out to be a school zone was a coincidence. In response, the court again suggested that a standard less than personal knowledge or reasonable cause to believe was enough: "But he knew there was a school there? Everybody knows there's a school, Sagrado Corazon, in Santurce. Well, it's common knowledge. You can see the school from the street. Do you understand that, sir?" Given the misdirected

---

[13] A school zone is an area within school grounds or "within a distance of 1,000 feet from the grounds of a public, parochial or private school." 18 U.S.C. § 921(a)(25); see also United States v. Nieves-Castaño, 480 F.3d 597, 603-04 (1st Cir. 2007).

nature of the court's question, it is not clear what Figueroa was admitting or thought was required.[14]

Next, in summarizing all the charged offenses, the district court again affirmatively suggested a lesser mens rea than the law requires. First, it misstated the required proof for counts 2, 3, and 4, suggesting that proof that Figueroa was in possession of "one of those firearms that happened to be stolen . . . [or] that happened to be an automatic firearm converted or otherwise, and [that] it so happened all these firearms were possessed in a school zone" was sufficient to prove the offenses. Of course, the fact that a firearm "happened to be" anything is not enough to establish criminal liability under the charged offenses. The court created further confusion by asking Figueroa whether he had any doubt about what he was pleading to. The court asked, "No doubt? Do you have a doubt or no doubt? No doubt?" From Figueroa's "No," we do not know whether he meant he had doubt or he had no doubt.

The district court also failed to offer any explanation of the Government's burden in proving the aiding and abetting

_____

[14] As we have held, evidence of the location of a school or even of the fact that it is visible from the location of a defendant's unlawful possession of a firearm is insufficient, in itself, to prove knowing possession of a firearm in a school zone. See Guzmán-Montañez, 756 F.3d at 11-12.

counts.  See Encarnación-Ruiz, 787 F.3d at 584 ("[T]he government must prove that an aider and abettor of criminal conduct participated with advance knowledge of the elements that constitute the charged offense.") (citing Rosemond v. United States, 134 S. Ct. 1240, 1248-49 (2014)).  In this respect, neither the Government nor the district court made any effort to distinguish between the proof necessary to convict Figueroa as a principal and that required to convict him as an aider and abettor.  Thus, the record does not establish that Figueroa understood the difference between "possessing firearms" and "aiding and abetting others in possessing firearms."[15]

The district court further compounded this error through its confusing question, "So you, aided and abetted by others, or others aiding and abetting you, whatever way you want to call it, were in possession of these firearms in that car?"  We do not know whether Figueroa's response of "Yes" to this disjointed compound question meant that he was "in possession of these firearms in that car" or "others . . . were in possession of these firearms in that car."  We do not know which theory of liability the Government

---

[15] "In order to sustain a conviction for aiding and abetting the government must prove, in addition to the commission of the offense by the principal, that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal."  United States v. Henderson, 320 F.3d 92, 109 (1st Cir. 2003).

intended to pursue, as, indeed, neither the Government nor the district court offered any explanation of the distinction between principal and aider and abettor liability.

Last but not least, Figueroa's final, formal entry of a plea was itself ambiguous and less than explicit. According to common practice, the colloquy resulting in a guilty plea concludes with the question, "How do you now plead to the charge, guilty or not guilty?" West's Federal Forms, § 84:42 (May 2014). So that an explicit, non-ambiguous record is created, the defendant should be prompted to state either "guilty" or "not guilty." Here, the court did not follow this sensible practice. Rather, it asked, "Do you still want to plead, sir?" Figueroa then gave no verbal or oral answer at all, but instead only nodded his head up and down. Again, we are left without an unambiguous, explicit admission of guilt.

### 3. The district court's numerous plain errors in accepting Figueroa's guilty plea prejudicially affected the fairness of the proceedings

The foregoing demonstrates that the district court committed plain and obvious error in entering Figueroa's plea as knowing and voluntary. Remaining are the third and fourth prongs of the plain error standard. Gandia-Maysonet, 227 F.3d 1, is instructive on those points as well. In Gandia, we found the district court's error in describing the mens rea for carjacking

- 23 -

as "knowingly and unlawfully," rather than as "with the intent to cause death or serious bodily harm," sufficiently prejudicial to affect the defendant's substantial rights, thus satisfying the third prong of plain error review. Gandia, 227 F.3d at 4-5. We thought that the court's "repeated misstatement, if accepted by [the defendant], could well have encouraged him to plead guilty. After all, a defendant who honestly did not think that he had intended to kill or maim might well bridle if told that he had to admit to this intent . . . ." Id. at 5. The district court's misstatements about the scienter requirements at Figueroa's colloquy were at least as confusing and misleading as those in Gandia. Additionally, as in Gandia, there is little evidence that the defendant understood the element from some other source. See id. And so we conclude that this confusion "could well have encouraged [the defendant] to plead guilty." Id.

If there were any doubt, our conclusion is easily confirmed by the manner in which a weakness in the government's proffer aligns with the district court's most glaring errors in explaining the law. The government's proffer offered at best a sketchy basis for inferring that Figueroa possessed or constructively possessed the firearms, much less that he knew that any were stolen. The proffer showed only that Figueroa was in the back seat of a car that contained three firearms, one of which was somewhere on the floor of the car. Such presence, by itself, is

not enough to establish criminal liability.  See, e.g., Ridolfi,

768 F.3d at 62 (noting that "mere presence with or proximity to

weapons, or association with another who possesses a weapon, is

not enough" to sustain a conviction for firearms possession);

United States v. Davis, 773 F.3d 334, 342 (1st Cir. 2014) (same);

United States v. Rodríguez-Lozada, 558 F.3d 29, 40 (1st Cir. 2009)

(same); United States v. Duval, 496 F.3d 64, 79 (1st Cir. 2007)

(same).  Rather, the Government must show "some action, some word,

or some conduct that links the individual to the contraband and

indicates that he had some stake in it, some power over it."

United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (quoting

In re Sealed Case, 105 F.3d 1460, 1463 (D.C. Cir. 1997)).  There

was no such fact conceded or otherwise made a part of the record

that provided a rational basis for concluding Figueroa "had some

stake in" or "some power over" the weapons in the car.[16]

---

[16] The closest the proffer comes to suggesting Figueroa was in constructive possession of a firearm is the allegation that a firearm was found "in the floor of the car" after Figueroa exited the vehicle.  From this, one reasonably might infer that the firearm was found on the floor near where Figueroa was sitting, from which one reasonably might infer that it was within arm's reach of Figueroa, from which one reasonably might infer Figueroa knew the weapon was within arm's reach, from which one reasonably might infer that Figueroa was in possession of the firearm. Facts, however, may not be established by stacking inference upon inference.  See United States v. López-Díaz, 794 F.3d 106, 113–14 (1st Cir. 2015) (citing United States v. Burgos, 703 F.3d 1, 10 (1st Cir. 2012)).  Again, there were no facts indicating Figueroa knew there was a firearm "in the floor," or that he "knowingly [had] the power and intention at a given time to exercise dominion or control over [a firearm] either directly or through others."

The district court therefore had before it a defendant claiming a lack of the precise knowledge for which the prosecution was offering no evidence at all.  In short, a man was apparently and unwittingly telling the court that he was very likely not guilty of the charge, with no evidence to the contrary.  We have no difficulty finding in such a case that, but for the court's error in wrongfully disregarding Figueroa's unwitting claims of innocence, there is a reasonable probability that this guilty plea would not have been entered.

Nor, finally, is there any doubt that the error seriously affects the fairness and integrity of judicial proceedings.  We noted in Gandia that the plea's "force . . . in evidencing arguable guilt was substantially undercut by the misstatement of the scienter standard."  Id. at 6.  Given that, in combination with the fact that "the other evidence of scienter was thin (although not beyond reasonable inference)," we held that the fourth prong of plain error review was satisfied, "because [the error] seriously affected the guilty plea colloquy's fairness and integrity."  Id. The same result is dictated by the errors in this case.

---

United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (quoting United States v. Carlos Cruz, 352 F.3d 499, 510 (1st Cir. 2003)); see also United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007) (finding constructive possession of firearm found hidden in vehicle's engine compartment shown by, inter alia, defendant's statement that, "When they came from everywhere, I could have gone boom, boom").

**B.    Sentencing Error**

Although vacation of the judgment on the grounds stated above obviates the need to address the district court's alleged sentencing error, for sake of completeness, we next address Figueroa's argument that the district court committed procedural error by imposing a sentence contrary to the guidance provided at USSG §§ 2K2.5 and 3D1.1.  Because this issue is raised for the first time on appeal, review is for plain error.  United States v. Goodhue, 486 F.3d 52, 55-56 (1st Cir. 2007).

"We review criminal sentences for reasonableness, using an abuse of discretion standard."  United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012) (citing Gall v. United States, 552 U.S. 38, 46 (2007)).  This review "is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable."  Id. (quoting United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011)).  For a sentence to be procedurally reasonable, the district court must have properly calculated the guideline sentencing range.  See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008) (explaining that procedural errors include "failing to calculate (or improperly calculating) the Guidelines range" (quoting Gall, 552 U.S. at 51)).

In the instant case, the district court committed procedural error by improperly calculating the Guidelines range. Because the four offenses in question involved the same act or transaction, they were properly grouped under USSG § 3D1.2(a). For counts included in a single group because they involved the same act or transaction, "the offense level applicable to [the] Group is the offense level . . . for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group." USSG § 3D1.3(a). In the instant case, the most serious counts comprising the group were counts 1, 2, and 3. The offense level applicable to the group, then, was the offense level applicable to counts 1, 2, and 3. In this case, that offense level was 24, yielding a guideline sentencing range of 57-71 months' imprisonment at CHC II.

The district court erred in calculating the guidelines range by removing count 4 from the group, calculating a guideline range for it separately, and then adding the count 4 calculation to the group calculation. The court was correct in running the term of imprisonment for count 4 consecutively, but erred by running it in addition to the guideline range calculated for the group.

Multiple counts of conviction are grouped under USSG § 3D1.1(a)(1) by applying the grouping rules of USSG § 3D1.2.

Under USSG § 3D1.2(a), convictions are grouped together if they involve the same act or transaction. But USSG § 3D1.1(b)(1)(B) creates an exception to this rule for any count of conviction that "requires that [its] term of imprisonment be imposed to run consecutively to any other term of imprisonment." Moreover, Application Note 2 to USSG § 3D1.1 provides that a conviction under 18 U.S.C. § 922(q) is not subject to this exception, and that the multiple count rules therefore apply. The result that follows from this guidance is consistent with the guidance set forth at Application Note 3 to USSG § 2K2.5, which provides that when "the defendant is convicted both of [an] underlying offense and 18 U.S.C. § 922(q), the court should apportion the sentence between the count for the underlying offense and the count under 18 U.S.C. § 922(q)."[17] By straying from this guidance and not apportioning the sentence for violation of 18 U.S.C. § 922(q) as part of the guidelines range, the court imposed a sentence above the guidelines range sentence, even though it apparently intended to impose a guidelines sentence.[18] Accordingly, we conclude the first two

---

[17] "For example, if the guideline range is 30-37 months and the court determines 'total punishment' of 36 months is appropriate, a sentence of 30 months for the underlying offense, plus 6 months under 18 U.S.C. § 922(q) would satisfy this requirement." USSG § 2K2.5, Application Note 3.

[18] It is not clear from the record whether the district court recognized that, even under its mistaken understanding of the grouping rules, 78 months would have represented a high-end guidelines sentence. At sidebar, the court after some discussion

prongs of the plain error standard have been met, namely, that (1) there was an error, and (2) the error was plain or obvious.

We also conclude that the third prong of the plain error standard has been met, in that the district court's error affected Figueroa's substantial rights, i.e., it affected the outcome of the court's proceedings.  The record clearly shows that the court believed the guidelines called for the stacking of the count 4 period on top of the group period, rather than apportioning the offenses within the group period, thus increasing the guidance by seven months.  It also appears that the court's intention was to impose a guidelines sentence, properly calculated.  Absent any indication to the contrary, we therefore presume that, but for the error, there is a reasonable likelihood that the sentence would have been shorter.  See United States v. Ortiz, 741 F.3d 288, 293–94 (1st Cir. 2014).

---

correctly stated that 60 months is the statutory maximum for violation of 18 U.S.C. § 922(q), see 18 U.S.C. § 924(a)(4), but when issuing its sentence, the court stated, "If I were to do high end on both ends, I would have to sentence you to 71 and 60. That's 117 months."  The high end of a guidelines sentence under CHC II for violation of 18 U.S.C. § 922(q) is in fact 7 months. The record suggests a risk that the court was mixing apples (guideline ranges) and oranges (statutory maximums), leading it to impose a variant or upwardly departing sentence while believing itself to be imposing a more lenient guidelines sentence.

Finally, we believe the court's sentencing error "seriously affects the fairness, integrity or public reputation of judicial proceedings." As we stated in United States v. Díaz-Correa, 287 F. App'x 899 (1st Cir. 2008) (unpublished per curiam): "Where correction of [] a guidelines calculation error would lead to a lower sentence, remand for resentencing is ordinarily warranted under the third and fourth prongs of [the plain error] standard." Id. at 900-01 (citing United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir. 2005)).

## V. Conclusion

For the foregoing reasons, we vacate Figueroa's conviction and sentence, and we remand to a different district court judge for proper consideration of the proposed plea, including consideration of whether there is a sufficient factual basis to support the plea, and such further proceedings as are then called for.[19]

---

[19] Because we recommend the judgment be vacated, we need not address Figueroa's ineffective assistance of counsel claim.